## MERCHANTS NATIONAL BANK OF ST. PAUL v. STATE BANK OF WORTHINGTON AND OTHERS.[1]

June 24, 1927.

No. 26,002.

**When intention of drawer of check results in equitable assignment of fund to the payee.**

1. Although a check does not of itself operate as an assignment of a fund to the credit of the drawer with the bank upon which the check is drawn, if the drawer intends to appropriate a specific portion of the fund to the payment of the check, an equitable assignment of the fund results as between the drawer and the payee, and the evidence in the present case warranted the court in so finding.

**Surrender of drafts a valuable consideration for assignment of funds to pay check.**

2. Upon receiving the check, the payee surrendered drafts to be collected from the drawer and exposed itself to liability to the bank from which the drafts were received. This was a valuable consideration for the assignment of funds sufficient to pay the check.

1Reported in 214 N. W. 750.

**Sufficient foundation laid to admit telephone conversation.**

3. A sufficient foundation is laid for the admission in evidence of a telephone conversation when the subject matter of the conversation, the time of its occurrence, and the prior and subsequent conduct of the parties fairly establish the identity of the person who sent the call and with whom the conversation occurred.

**When rights of parties are not affected by appointment of receiver.**

4. The appointment of a receiver does not affect the rights of parties who dealt with each other in good faith before notice of the appointment.

**Allowance of interest erroneous.**

5. It was error to charge the appellant bank with interest on money under the control of the respondent bank.

Assignments, 5 C. J. p. 921 n. 63, 64; p. 932 n. 19; p. 1019 n. 39.
Evidence, 22 C. J. p. 193 n. 90, 94.
Interest, 33 C. J. p. 182 n. 36.
Receivers, 34 Cyc. p. 184 n. 44 New.

———————

See note in 5 A. L. R. 1667; 5 R. C. L. 489, 494; 1 R. C. L. Supp. 1314; 4 R. C. L. Supp. 429; 5 R. C. L. Supp. 286; 6 R. C. L. Supp. 305.
See note in 6 L.R.A.(N.S.) 1180; L. R. A. 1918D, 720; 10 R. C. L. 931; 6 R. C. L. Supp. 629.

Action in the district court for Nobles county to recover of the defendant State Bank of Worthington the face value of drafts drawn on the St. John Grain Company and sent by the plaintiff to the Worthington bank for collection. On motion of the Worthington bank the First National Bank of Mankato and Frank E. Crandall, as receiver of the St. John Grain Company, were joined as defendants. The Worthington bank filed a cross-complaint, to which the Mankato bank and the receiver answered. There were findings for the defendant Worthington bank, and the Mankato bank and Crandall, as receiver, appealed from an order, Nelson, J., denying their motion for a new trial. Modified and affirmed.

*Cobb, Wheelwright, Hoke & Benson, Rex H. Kitts, John C. Benson,* and *A. R. Pfau, Jr.,* for appellants.

*Fowler, Carlson, Furber & Johnson* and *E. H. Nicholas,* for respondent State Bank of Worthington.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondent Merchants National Bank of St. Paul.

LEES, C.

For the sake of brevity, the plaintiff will be referred to as the St. Paul bank, the first named defendant as the Worthington bank, the second named as the Mankato bank, and the St. John Grain Company as the grain company.

The St. Paul bank sued the Worthington bank to recover $5,872.20, the face value of drafts drawn on the grain company and sent by the St. Paul bank to the Worthington bank for collection and remittance. The complaint alleged that the Worthington bank surrendered the drafts to the grain company and took in payment its check on the Mankato bank contrary to the instructions of the St. Paul bank. Upon the motion of the Worthington bank, the Mankato bank and the receiver of the grain company were made defendants, and the Worthington bank filed a cross-complaint, to which the receiver and the Mankato bank answered separately.

The court found that the drafts came into the hands of the Worthington bank and were presented to the grain company for payment on July 11, 1924; that the company was unable to pay them in cash, but offered to draw and deliver its check on the Mankato bank in payment of the drafts, representing that it then had a credit balance in the Mankato bank of more than $1,000 and agreeing to devote the balance specially to the payment of the check and to forward certain checks and drafts to the Mankato bank for deposit, the proceeds thereof to be specially applied to the payment of the check, the Worthington bank to have a lien on the whole fund to secure the payment of the check; that the checks and drafts so to be deposited aggregated $5,163.70, and were

selected and set apart by agreement of the grain company and the Worthington bank and appropriated for the payment of the check; that pursuant to the agreement the Worthington bank accepted the check in payment of the drafts and surrendered them to the grain company; that simultaneously with the delivery of the check the grain company forwarded the items of the deposit to the Mankato bank as agreed; that it intended that the Worthington bank should have a lien on these funds and its existing credit balance and that the funds should be devoted to the payment of the check; that the deposit was received by the Mankato bank on the morning of July 12, 1924; that the bank refused to give the grain company credit for the checks and drafts deposited until they were collected and refused to pay the check to the Worthington bank before such collections were made, and so notified the grain company and the Worthington bank; that thereupon it was agreed between the Mankato bank, the grain company, and the Worthington bank that the first named bank should proceed to collect the checks and drafts, add the proceeds thereof to the amount of the grain company's credit balance in the bank, refrain from protesting the check, and pay it as soon as the bank collected so much of the deposit as was necessary to increase the balance to the amount of the check.

The court also found that these agreements were made and the acts done before the appointment or qualification of the receiver; that all the items deposited were collected prior to July 16, 1924; that among them was a check drawn on the Worthington National Bank, which the Mankato bank forwarded to the Worthington bank for collection and which it collected; that the money collected has ever since remained in the possession of the Worthington bank and that the bank claims to have a lien thereon by virtue of the agreements already mentioned; that in the afternoon of July 12, 1924, in a suit pending in the district court of Hennepin county, a receiver of all the property of the grain company was appointed; that he qualified on July 14 but asserted no claim to the funds in controversy until July 17; that none of the banks made parties to this action had any notice of the proceedings for the appointment of the receiver until after July 12.

The conclusions of law were in effect that the Worthington bank had a lien on the money in its possession and in the possession of the Mankato bank to secure the payment of $5,872.20; that the Mankato bank should pay $3,472.20 to the Worthington bank with interest on $5,872.20 from July 12, 1924, to the date of the entry of judgment, and should be discharged from liability to the grain company and the receiver to the extent of the amount so to be paid.

The Mankato bank and the receiver moved for a new trial and have appealed from an order denying their motion.

It is an established rule of law, now embodied in the uniform negotiable instruments act, § 189 (G. S. 1923, § 7232), that a check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank upon which the check is drawn. This provision of the act was considered in Burrows v. Burrows, 240 Mass. 485, 137 N. E. 923, 20 A. L. R. 174.

The rule is subject to the qualification that, if the drawer of the check intends to give the payee an interest in or lien upon a fund in the hands of the drawee bank and to appropriate a specific portion of the fund to the payment of the check and sufficient proof of such intention is made, then, as between the drawer and the payee, the check operates as an equitable assignment and, after receiving notice of the intention and purpose of the parties, the bank must comply with the directions of the drawer if it can do so without prejudice to its own rights or the rights of third parties which have intervened before such notice was received. See First Nat. Bank v. Rogers-Amundson-Flynn Co. 151 Minn. 243, 186 N. W. 575; Carlson v. Stafford, 166 Minn. 481, 208 N. W. 413.

Fourth Street Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. ed. 855, is high authority for this doctrine. The facts there were somewhat more favorable to the payee of the check than they are here. The transaction between the drawer and the payee was not an ordinary commercial transaction. The court thought that the situation and conduct of the parties evinced an intention that the funds of the drawer on deposit in the drawee bank should be transferred and appropriated pro tanto for the payment of the check. In the course of the opinion it was said [165 U. S. 653]

that, when the proofs establish the intention and agreement of the parties that a check drawn generally shall be paid out of a particular fund, as between the parties the check is to be treated as an order for the payment of a designated amount out of a specific fund and operates as an equitable assignment thereof.

Parlin & Orendorff Imp. Co. v. Moulden (C. C. A.) 228 F. 111, L. R. A. 1917B, 130, is a bankruptcy case, but the opinion states general principles applicable here. It was held that a court of equity will give to an agreement that certain property shall be presently appropriated to the payment of a debt the effect of creating a charge upon the property, under the maxim that equity regards as done that which ought to be done; that an equitable assignment arises when there is an agreement between the parties dealing with and identifying some particular property or fund or so describing it that it can be identified, and an intent that the property or fund shall be transferred forthwith and held thereafter as security for the debt.

The transaction between the grain company and the Worthington bank was not an ordinary commercial transaction. The grain company had an account with the Worthington National Bank. The solvency of that bank was doubted by the Worthington bank. The evidence shows that the president of the last named bank informed the manager of the grain company's business at Worthington that he would not accept a check on the first named bank in payment of the drafts; that the grain company then proposed to take up the drafts by issuing its check on the Mankato bank, and, for the purpose of inducing the Worthington bank to accept the check, made the representations and agreement set forth in the court's findings. We think the court was justified in inferring that the grain company intended to assign to the Worthington bank the fund it then had on deposit in the Mankato bank and so much of the funds to be deposited simultaneously with the delivery of the check as would be sufficient to pay the check; that the check was given to carry out this intention, as the Mankato bank learned on the following day; that the subsequent conduct of the bank and the

conversations of its cashier with the representatives of the grain company and of the Worthington bank were confirmatory of the understanding and agreement between the drawer and the payee of the check; and that after July 12 none of the parties to the transaction could be heard to say that the check did not operate as an equitable assignment of an amount of money deposited in the drawee bank sufficient to pay the check.

It is undoubtedly true that a representation by the drawer of a check that the bank on which it is drawn will preserve funds then on deposit and apply them to the payment of the check is merely promissory. In substance it is a representation that the check will be honored when presented for payment; that the drawer will not stop payment or withdraw the funds or appropriate them to some other purpose. So far as we know no court has held that such a representation, standing alone, warrants the conclusion that the payee becomes an equitable assignee of so much of the fund as is necessary to pay the check. All this and more to the same effect is well put in El Dorado Nat. Bank v. Butler County State Bank, 120 Kan. 109, 242 P. 475. But we think the situation disclosed by the evidence and found to exist in the present case justifies the application of the rule announced in the cases to which we have referred at the outset, and we turn our attention to the attacks made upon the findings themselves.

There is no merit in the contention that there was no consideration for an assignment of the funds. By surrendering the grain drafts, the Worthington bank exposed itself to direct liability to the St. Paul bank, and to indirect liability to the owners of the drafts. The bank acted to its detriment on the faith of the agreement with the grain company, and it is elementary that detriment to the promisee is a sufficient consideration to support a contract. Dun. Dig. § 1750.

Complaint is also made of the admission in evidence of the conversation between the cashier of the Worthington bank and an employe of the grain company when the check was taken in exchange for the grain drafts. The conversation was confirmatory

of what had already been agreed upon between the president of the bank and the manager of the grain company, and all that was said and done should be given the same effect as though Jones, the president, and St. John, the manager, had spoken and acted.

It is contended that testimony as to the telephone conversations alleged to have been had with the cashier of the Mankato bank was improperly received because Jones and St. John, who gave the testimony, admitted that they did not recognize the voice of the person who called and professed to speak for the bank.

It is the rule in this state that a sufficient foundation is laid for the admission in evidence of a conversation by telephone when it is shown that a witness called a certain person and was answered by someone professing to be the person called, and that such a showing raises a rebuttable presumption that the person answering is the one who was called. Barrett v. Magner, 105 Minn. 118, 117 N. W. 245, 127 A. S. R. 531; Gardner v. Hermann, 116 Minn. 161, 133 N. W. 558; Wetmore v. Hudson, 149 Minn. 332, 183 N. W. 672. It is contended that the rule should not be extended to such a case as this, where the witness did not send but received the call, and Theisen v. Detroit T. & T. Co. 200 Mich. 136, 166 N. W. 901, L. R. A. 1918D, 715, is cited in support of the contention.

Circumstantial evidence may be of such a character as to warrant the inference that the person sending a call is the person he professes to be. The subject matter of the conversation, the time of its occurrence, and the prior and subsequent conduct of the parties may be such as to establish the identity of the person who sent the call.

In the instant case the circumstances identified the caller and warranted the court in admitting the conversations in evidence.

In Lundgren v. Union Ind. Co. 171 Minn. 122, 213 N. W. 553, speaking of the foundation necessary to permit the introduction in evidence of a telegram, it was said that the authenticating evidence may be indirect and circumstantial and that when, from its contents and from other circumstances in evidence, it is reasonably inferable that the author is the person sought to be charged, the

telegram may be admitted. These observations are pertinent to telephone messages as well as telegrams and tend to support the ruling of the trial court.

Broadly stated, the rule is that a receivership does not affect parties who deal in good faith and without notice with the party over whose property the receiver is appointed; Noyes v. American F. L. Mtg. Co. 97 Minn. 38, 105 N. W. 1126; Merrill v. Zimmerman, 152 Minn. 333, 188 N. W. 1019; Fourth Street Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. ed. 855; hence the court did not err in holding that the receiver had no greater rights than the grain company as against the banks involved.

The court awarded the Worthington bank interest on the money it collected from the Worthington National Bank and charged the Mankato bank with the payment thereof. The Mankato bank did not have the use of this money. It was never in its keeping or under its control. There was no contract to pay interest. If interest is recoverable at all, it must be on the theory that the money was wrongfully detained from the Worthington bank to its damage. Auerbach v. Gieseke, 40 Minn. 258, 41 N. W. 936.

We are unable to see wherein the Mankato bank was in default in the payment to the Worthington bank of the money that bank had in its possession. It is urged that the money was held in trust for the St. Paul bank and could not be used by the Worthington bank, but we think that to compel the Mankato bank to pay interest on $2,400 which it never had would be highly inequitable. Except as to this particular, the case was correctly decided.

The order denying a new trial should stand, but the court below is directed to modify its conclusions of law by eliminating therefrom the award of interest to the Worthington bank on the sum of $2,400.