## MARTIN S. KATZMAREK, *d. b. a.* M. S. KATZMAREK COMPANY, v. WEBER BROKERAGE COMPANY AND OTHERS.[1]

April 2, 1943.

No. 33,374.

*Brill & Maslon,* for appellants.
*Carlson & Carlsen* and *John E. Katzmarek,* for respondent.

HILTON, JUSTICE.

This is a suit to recover $1,200, the amount of a certified check payable to defendant Weber Brokerage Company, given by plaintiff to defendant John H. Woodward for the purchase from that company of 200 bags of sugar which plaintiff never received. It

[1]Reported in 8 N. W. (2d) 822.

was alleged that Woodward was acting as agent for the defendants Weber Brokerage Company, C. D. Robinson Company, and Frank J. Weber, who, for the purposes of this case, were the same concern and will hereafter be referred to as the brokerage company. Plaintiff had a verdict against all the defendants, and this appeal is taken by defendants, other than Woodward, from an order denying their alternative motion for judgment notwithstanding or a new trial.

■ There was evidence tending to prove that on September 7, 1939, John Woodward came to the plaintiff's place of business and told him that he was connected with the brokerage company and could get him 200 sacks of sugar at $6.00 per sack. Plaintiff objected to the price and, at Woodward's suggestion, listened in on a telephone extension while Woodward called Mr. Weber at the brokerage company. According to the testimony of plaintiff, it was then agreed between the brokerage company and Woodward that the former would sell and set aside for plaintiff 200 sacks of sugar at $6.00 per sack. Woodward testified that he did not remember this conversation. However, it is not disputed that on this same day plaintiff made out a check for $1,200, payable to the Weber Brokerage Company, that he wrote on the check, "for 200 sack sugar," and that he had the check certified and handed it to Woodward. Plaintiff had no immediate use for the sugar and told Woodward that if delivery could be delayed it would be satisfactory to him. Woodward then took the check to the brokerage company, which wrote out a warehouse receipt to "Woodward's" for the sugar, which was stored in an independent warehouse. At the same time, an employe of the brokerage company billed the invoice to "Woodward's Inc." It appears that Woodward's, Inc. is a retail and wholesale house with which the defendant Woodward has no connection although it is operated by his brother. Apparently, Woodward and the brokerage company had previously agreed upon a price of $5.75 per sack for the sugar, so, upon surrendering the $1,200 check, the brokerage company gave Woodward $50 in cash. Woodward later took the sugar out

582

of the warehouse and disposed of it. The sole issues are whether or not Woodward was acting as agent for the brokerage company in this transaction, and, if so, whether both principal and agent are liable to plaintiff for the face of the certified check. Any claim of conspiracy between or negligence of the defendants has been eliminated.

Appellants contend that a verdict against both Woodward and the brokerage company is perverse. The court charged the jury:

"If Woodward was the agent of the defendant companies in the sale of the sugar which plaintiff claims to have purchased on September 7th, * * * then the defendants having received the money on the check were obligated to deliver to plaintiff the sugar purchased by plaintiff through Woodward as the agent of the defendants; failing to do so, plaintiff was entitled to recover back the money he claims to have paid for the sugar. And if Woodward used this check to purchase the sugar from the defendants for Woodward's Inc., he is liable to the plaintiff for the amount of the check."

And again, after charging them on whether the brokerage company received the check through their agent, Woodward:

"If you so find your verdict will be for the plaintiff in this action against the defendants Weber Brokerage Company and Robinson Company in the amount of $1,200 and interest since September 7, 1939. And if you find that Woodward used the check to purchase sugar for Woodward's, Inc., without any authority from the plaintiff, plaintiff would be entitled to recover from Woodward the sum of $1,200 and interest thereon since September 7, 1939."

The instructions were not excepted to and therefore, whether correct or erroneous, became the law of the case. Smith v. Pearson, 44 Minn. 397, 46 N. W. 849; Hawley v. Town of Stuntz, 178 Minn. 411, 227 N. W. 358; Flower v. King, 189 Minn. 461, 250 N. W. 43; Oxborough v. Murphy T. & S. Co. 194 Minn. 335, 260 N. W. 305. Under these instructions, the jury was clearly justified

in finding that Woodward was the agent of the other defendants and also that he purchased the sugar for Woodward's, Inc. without authority of the plaintiff. A verdict against all the defendants was therefore not inconsistent with the instructions.

█ It is earnestly claimed by appellants that the telephone conversation between Weber and Woodward, to which plaintiff listened on an extension and testified to, was improperly admitted. It is well settled that conversations had over the telephone are admissible in evidence where the witness testified that he recognized the voice over the phone. William Deering & Co. v. Shumpik, 67 Minn. 348, 349, 69 N. W. 1088. However, the identity of the person called can be established with reasonable certainty by means of the surrounding facts and circumstances. Merchants Nat. Bank v. State Bank, 172 Minn. 24, 214 N. W. 750. If such considerations were not allowed, many transactions in the commercial world would be beyond the protection of the law, for it is well known that in many cases the voice is not recognized and yet rights and liabilities are continually being established by this means of communication. Circumstances preceding or following the conversation or the very subject matter itself may serve to establish the identity of the party. Apart from any special circumstances, it has been held that the circumstantial trustworthiness of the modern telephone system is safe enough to treat such testimony in law as at least sufficient evidence to go to the jury. Wetmore v. Hudson, 149 Minn. 332, 183 N. W. 672 (rebuttable presumption) ; 7 Wigmore, Evidence (3 ed.) p. 617, § 2155.

Where the testimony of Katzmarek came in it was *prima facie* evidence that the conversation was with Weber, who afterwards admitted having a telephone conversation with Woodward on the day in question. He denied the tenor but not the fact of the conversation. For the purpose of determining the sufficiency of this type of evidence, the fact that Katzmarek was listening to the conversation by means of an extension telephone rather than making the call himself is immaterial. The fact that Woodward failed to corroborate the conversation affects the weight but not the

sufficiency of the testimony. It was sufficient with other circumstances to justify a finding of agency.

■ Much complaint is made of plaintiff's method of examining defendant Woodward with the aid of a letter written by him with reference to the facts establishing the agency. The court allowed plaintiff to refer to the letter in examining Woodward, who had been evasive in his testimony about those facts but finally testified that the facts recited in the letter were true. We think it was within the court's discretion, in view of Woodward's previous testimony, to permit such examination, although the admission of the letter in evidence in the first instance may have been error. Such error was rendered nonprejudicial by the subsequent examination of Woodward. Plaintiff did not have a strong case of agency on this testimony, but, supported by the other circumstances in evidence, it was sufficient to go to the jury.

Order affirmed.