NELENA SAUBER, SPECIAL ADMINISTRATRIX
SUBSTITUTED FOR
J. E. SAUBER, v. NORTHLAND INSURANCE COMPANY.

87 N. W. (2d) 591.

January 10, 1958—Nos. 37,216, 37,225.

238

*John J. McBrien,* for appellant-respondent.

*Merlyn C. Green* and *Bundlie, Kelley & Maun,* for respondent-appellant.

KNUTSON, JUSTICE.

On June 18, 1953, R. J. McDonald was the owner of a 1952 Hudson automobile. On that date he procured a policy of insurance on the car from defendant. Among other things, the policy covered damages caused by collision or upset. The policy ran for two years, and the premium was paid for that length of time.

On November 20, 1953, McDonald sold the car to his brother-in-law, John E. Sauber. The transfer was completed in a bank at Farmington. After transferring the title card to Sauber, McDonald handed him an envelope containing the insurance policy. Sauber then called Northland Insurance Company, defendant herein, on the telephone about the insurance. His testimony is that a woman answered the telephone. She inquired whether she could help him, and his testimony in that regard was as follows:

"I was informed, naturally, it was the Northland Insurance Company; I didn't know her name or whether she said this was the Northland Insurance Company, but she knew I was talking to the right place; the purpose was, I told her I had purchased the car and it was transferred to me and I was the new owner of the car and I had the insurance policy and I wanted to know if it was all right I would drive the car with this insurance and she said it is perfectly all right, go ahead and that is about the summary of the whole deal; I was the new owner of the car and it was insured by them people."

On cross-examination he testified as follows:

"A. Well, I did advise her I had purchased the car, I was the new owner of the car, it was insured in their company and I am not positive whether she just glanced or looked if there was insurance on it or not but she said it was all right to go ahead and drive the car, that was the reason I telephoned her.

\* \* \* \* \*

"Q. So that was the substance of the conversation and the complete substance of the conversation; you told her the facts as you stated you had bought the car, that there was a policy on it and said, is it all right for me to continue to drive it and she said yes, according to your testimony?

"A. Yes, and that by the new arrangement was the insurance all right that I could drive the car and she assured me it was.

"Q. You made no further inquiry about anything further you should do to accomplish a transfer of any insurance coverage?

"A. No, I didn't; I figured they would take care of it.

"Q. You didn't ask if there was anything necessary for you to do to transfer the policy over?

"A. No, I didn't.

"Q. You didn't, in fact, request she transfer the coverage over to your name other than what you have stated?

"A. That was my intention of calling her.

\* \* \* \* \*

"Q. But you didn't make any request to her to transfer it other than what you have stated?

"A. I can't recall exactly, but I was assured it would be taken care of."

One of defendant's employees, Helen Serres, was called as a witness by defendant. She testified that on November 20, 1953, she answered a telephone call at the company office. She said that the call came from a man, but she did not remember whether he identified himself or not; he did tell her, however, that he was calling in regard to insurance issued to McDonald on the 1952 Hudson; and she checked the files in the office and found the policy. She denied that she told

the person calling that it would be all right to drive or that the policy would be transferred. She said: "He only asked if it could be done." It was her testimony that she informed the person calling that the policy could not be transferred until the Industrial Credit Company, which carried a finance contract on the car, had been paid. At the time of the call she made a memo on a pad. A portion of it, written in ink, reads:

"11/20 sold to
"J. E. Sauber
 Farmington, Minn.
"Employed
       Plumbing &
            Heating
            Self.
"Age - 58."

At the bottom is written in pencil the following:

"Will call back to advise whether or not to be trans.
"Pd in full
"11/25/53 per Grace"

When asked why part of it was in pencil and part in ink, she stated that her pen ran out of ink.

On cross-examination, Mrs. Serres admitted that it was part of her duties to answer inquiries coming over the telephone about insurance policies. She further testified that on November 25 she called the Industrial Credit Company and found that the balance on the car had been paid and that she then added the notation: "Pd in full per grace"; that Grace was an employee of the Industrial Credit Company. She was then asked:

"Q.   What was the purpose of your calling her? Why did you call her?

"A.   Well, to know that it actually was paid and that *if the insured call me back to transfer, we could go right ahead and do it.*" (Italics supplied.)

She further admitted that at the time she took the policy out of the

files she spoke to her supervisor about it and that her supervisor later told her to return the policy to the files.

When McDonald sold the car to Sauber he reserved the right to use it when he wished and to buy it back if he chose to do so. He did borrow the car on two occasions, and on the last occasion, March 24, 1954, he was forced off the highway by another automobile, and the Hudson was badly wrecked. A joint action originally was commenced by McDonald and Sauber to collect on the collision insurance coverage of the policy involved. The action brought by McDonald was dismissed by the trial court, and the jury returned a verdict in favor of Sauber in his action. Thereafter, motions for judgment notwithstanding the verdict or a new trial were made by defendant. The court denied the motion for judgment notwithstanding the verdict but granted a new trial exclusively upon errors of law. Defendant appeals from the order denying its motion for judgment notwithstanding the verdict, and plaintiff appeals from the order granting a new trial.

On its appeal, defendant contends that it is entitled to judgment notwithstanding the verdict for the reason: (1) That plaintiff has failed to establish that he conversed with Helen Serres or with any particular person at the office of defendant; (2) that plaintiff has failed to establish that the person with whom he claims to have talked was an agent of defendant or had authority to bind defendant by waiving any of the provisions of the policy; and (3) that plaintiff has failed to establish that the substance of the conversation was such as to create a contract of insurance by waiver, estoppel, or otherwise.

Plaintiff, on his appeal, contends that the court was not in error in permitting him to testify as he did regarding the telephone call alleged to have been made to defendant's office.

The claims of both parties involve a determination of the same legal questions and they, therefore, will be considered together.

The new trial was granted by the trial court for the reason that the court was of the opinion that it was error to admit evidence of the telephone conversation without plaintiff's first laying a foundation showing authority on the part of the person who spoke for defendant to act for it. In its memorandum, the court states the reason for granting the new trial, as required by M. S. A. 605.09(4), as follows:

"* * * Mr. McBrien [attorney for plaintiff] was informed of the danger of proceeding with testimony concerning the conversation between the plaintiff and the clerk without having subpoenaed some officer to testify regarding the established routine of the office in responding to telephone inquiries. The Court, desiring to avoid delay, permitted him to proceed in the hope that the proof would be furnished. After reviewing the entire transcript, the Court now formally confesses error, as it informally indicated at the close of the trial, in denying the defendant's motion to dismiss."

Defendant contends that this statement, in referring back to conferences in chambers; also included as one of the reasons for granting the new trial the insufficiency of the evidence to establish plaintiff's case. Of course, if that were so, then the order would not be appealable at all. Defendant states in its brief that "the facts basing plaintiff's claim have been thoroughly explored at the trial, with no reason to expect the presentation of any additional material facts at a new trial"; therefore, it concludes, that this court should order judgment for defendant on the record. While we do not agree with the last proposition, we construe the court's order to hold that the new trial was granted exclusively upon the alleged error of admitting the testimony of plaintiff regarding the telephone conversation without plaintiff's first having subpoenaed some officer to testify to the established routine of the office in responding to the telephone message.

Defendant's argument is based largely on the proposition that plaintiff has failed to identify the person with whom he talked on the telephone and that he has failed to establish the authority of such person to act for defendant. It contends that, while Mrs. Serres admits having talked to some male person on the date plaintiff claims to have called defendant about the policy involved and admits having made a memorandum on which she recorded the information which plaintiff claims to have transmitted over the telephone,[1] it is as likely that plaintiff and Mrs. Serres were referring to two conversations as to one. The argument is not convincing. Clearly, the jury was war-

---

[1] For Annotation on admissibility of such memorandum, see 167 A. L. R. 405.

ranted in drawing an inference that plaintiff talked with Mrs. Serres.

Determination of the admissibility of a telephone conversation, and its legal effect once it is admitted, frequently involves two separate propositions although they are often treated as one. The first involves the requirements for establishing the identity of the party with whom the conversation was claimed to have been had, and, as in this case, the second involves the authority of such person to speak for another. The first question deals exclusively with the question of admissibility, while the latter deals with the establishment of agency or authority to act.

■ On the issue of identification, it is always sufficient if it can be shown that the person calling can identify the voice of the person speaking at the other end of the line. But it is not always essential that identity be so established. It may be established by other surrounding facts and circumstances.[2] Circumstances preceding or following the conversation or the subject matter itself may serve to establish the identity of the party.[3]

■ A slightly different situation arises when a person calls an established place of business listed in a telephone directory. That is the type of case we are dealing with here. In such case, we long ago indicated that we favored the so-called liberal view, followed by a majority of the courts,[4] that, where a place of business installs a telephone and invites the public to use it in the transaction of business by listing its name in the telephone directory, one who answers a call at such place of business and undertakes to respond as the agent of the business establishment is presumed to have authority to speak in respect to matters of the general business carried on at such establishment.[5] Here, identification of a particular person who answers the

[2]Merchants Nat. Bank v. State Bank, 172 Minn. 24, 214 N. W. 750.

[3]Katzmarek v. Weber Brokerage Co. 214 Minn. 580, 8 N. W. (2d) 822. For Annotations on the entire subject, see 71 A. L. R. 5 and 105 A. L. R. 326; see, also, 20 Am. Jur., Evidence, §§ 365, 366.

[4]20 Am. Jur., Evidence, § 367; 31 C. J. S., Evidence, § 188; 7 Wigmore, Evidence (3 ed.) § 2155, p. 620; McCormick, Evidence, § 193, note 8; Annotations, 71 A. L. R. 13 and 105 A. L. R. 330.

[5]Gardner v. Hermann, 116 Minn. 161, 133 N. W. 558; Wetmore v. Hudson, 149 Minn. 332, 183 N. W. 672; Merchants Nat. Bank v. State

telephone is not essential. In a truer sense, we are concerned with the identity of the place of business rather than with a certain individual. In order for the conversation to be admissible, all that is necessary is to show that the place of business was called and that someone at that place answered and purported to act for the business establishment. Here, again, proof subsequent to the conversation may be sufficient to establish the identity of the business, and in this case it was admitted in the pretrial deposition and by her testimony at the trial that Mrs. Serres actually did receive a call which the jury could well find was that made by plaintiff.

■ When the conversation becomes admissible, the authority of the person who answers to speak for the business establishment becomes important. Here, again, we have indicated that we favor the rule that, when an employee of the business place answers the telephone at such established place of business and purports to act for such concern, a presumption arises that such person has authority to act. As a result of this presumption, the burden rests on the business establishment to rebut the presumption. In the absence of such rebutting evidence, the presumption controls as a matter of law. In Gardner v. Hermann, 116 Minn. 161, 165, 133 N. W. 558, 560, we said:

"* * * Business concerns, by installing a telephone in their places of business to be used in the transaction of affairs there conducted, impliedly invite the public to make use of that medium of communication. It is thereby made an agency for the transaction of business, and there are forcible reasons for the position that persons thus dealing have the right to assume that one answering his telephone call, who asserts a right to speak for his principal or employer, is authorized to do so and to transact the business there conducted."

These rules are well stated in New York Life Ins. Co. v. Silverstein (8 Cir.) 53 F. (2d) 986, 988, as follows:

Bank, 172 Minn. 24, 214 N. W. 750; Gilliland & Gaffney v. Southern Ry. 85 S. C. 26, 67 S. E. 20, 27 L. R. A. (N. S.) 1106, 137 A. S. R. 861 (which case was followed by us in Gardner v. Hermann, *supra*); Stein v. Jasculca, 165 Wis. 317, 162 N. W. 182; Kiviniemi v. American Mutual Lia. Ins. Co. 201 Wis. 619, 231 N. W. 252; Zurich General Acc. & Lia. Ins. Co. Ltd. v. Baum, 159 Va. 404, 165 S. E. 518.

"* * * Proof of identity is usually established by the witness' recognition of the voice of the person with whom he speaks. But the identity of the speaker may be established by other means, and where a witness calls the office of an established business on the telephone, his testimony as to the conversation had with the person answering the telephone and purporting to speak on behalf of the party is competent even though the witness does not recognize the voice of the person speaking and is not able to identify the speaker. This is based upon the presumption that one who answers a telephone call from the place of business of the person called for, and undertakes to respond as his agent, has authority to speak for him. * * *

* * * * *

"The defendant offered no testimony on this point, so that it stands without dispute that the conversation in fact occurred, and under the authorities above cited, it is presumed that the person with whom the plaintiff held this conversation had authority to speak for the defendant on the subject inquired about. There was, therefore, no error in admitting this evidence."

This presumption rests on the apparent authority of an agent and is based on the law that a principal is bound by the acts of his agent within the apparent authority which he knowingly or negligently permits the agent to assume or which he holds the agent out as possessing. The rule is stated in 1 Dunnell, Dig. (3 ed.) § 156, as follows:

"* * * Where one has reasonably and in good faith been led to believe from the appearance of authority which a principal permits his agent to have, and because of such belief has in good faith dealt with the agent, the principal will not be allowed to deny the agency to the prejudice of the one so dealing."

Restatement, Agency, § 8, defines apparent authority as follows:

"Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent."

Apparent authority in cases of this kind arises by virtue of the fact

that: (1) The business has invited the public to use the telephone to transact business with it; (2) the business has permitted an employee to answer the telephone; (3) such person has purported to act for the business with authority; and (4) the person calling the place of business had a right to assume that the person permitted to answer the telephone had authority to act. The presumption is not conclusive, but, once the basic facts giving rise to the presumption are proven, it is incumbent upon the defendant to produce evidence to rebut it. It might be rebutted, for instance, by showing plaintiff was not acting in good faith or had no reason to believe that defendant's employee had authority to act. But, in the absence of evidence rebutting the presumption, it controls as a matter of law. Once evidence competent to rebut the presumption is introduced, it becomes a question of fact whether plaintiff had good reason to rely on the apparent authority.

Defendant offered to prove by Mrs. Serres that she had no actual authority. It was not error to reject the offer of proof. We are not here concerned with actual or express authority. Apparent authority exists by virtue of conduct on the part of the principal[6] which warrants a finding that a third party, acting in good faith, was justified in relying on the assumption that the agent had authority to act.

We think that any other rule, in these days of modern business when so much business is transacted over the telephone, would not only be unjust but unrealistic. It would make it possible for a business concern to escape liability on agreements made in good faith simply by requiring the party doing business with it over the telephone to identify a person whom he has never seen or met or to prove the authority of that person to act for the establishment. When an employee of a business establishment is authorized to answer calls coming over the telephone, we think that it is only right that the burden of proving lack of authority should rest on the one who has placed such employee in a position where others dealing with the place of business would be apt to rely on his apparent authority.

It follows in this case that, when Sauber testified that he called defendant's office and someone answered and it was later shown that Mrs. Serres had a conversation with someone about the same subject,

---

[6]Mulligan v. Farmers Nat. Bank, 194 Minn. 451, 260 N. W. 630.

the jury could well find that plaintiff's conversation was had with her and that she answered in behalf of defendant company. Thereupon the presumption arose that she had authority to act for defendant in that matter. No proof was offered to rebut this presumption so it follows as a matter of law that authority to act has been established.

Defendant argues that the above rules do not apply where it must be shown that a conversation was with a particular person. It is true that, if it must be established that the conversation was had with some particular individual, there must be proof that the person who answered the telephone was such person.[7] Even in such case, however, proof of identity at the time of the conversation is not essential. The identity of the person answering the call may be established by means of surrounding facts and circumstances preceding or following the conversation or it may be established from the subject matter itself.[8] However, the exception to the general rule does not apply here. In this case it is obvious that the call was made to an established place of business, and the identity of the particular person answering the telephone need not be established. The important question is the identity of the place of business and the fact that someone at that place answered and purported to act for it. So much has been established here.

■ Defendant next contends that the court erred in refusing to instruct the jury as follows:

"An insurance contract of the type here involved is not by its nature assignable, and can only be assigned so as to cover a different insured person than the one named by and with the consent of the insuring company."

The policy contains the following provision:

"Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; * * *."

The court did instruct the jury:

---

[7]Barrett v. Magner, 105 Minn. 118, 117 N. W. 245; Annotations, 71 A. L. R. 30 and 105 A. L. R. 332.

[8]Merchants Nat. Bank v. State Bank, 172 Minn. 24, 214 N. W. 750; Katzmarek v. Weber Brokerage Co. 214 Minn. 580, 8 N. W. (2d) 822.

"* * * The applicable language of the policy * * * reads: 'Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon.' Because of this language the plaintiff cannot recover anything unless he has proved * * * that the defendant over the telephone waived or gave up its right of having such endorsement in accordance with paragraph 12 of the policy. Mr. Sauber claims that when he told Mrs. Serres that Mr. McDonald had assigned the policy to him and asked her if that policy insured him from that time on she said that it did and that she said nothing else about something to be done before he, Sauber, would be covered. This claim is denied by the defendant, so it is your duty to decide just what was said over the telephone."

It is of course axiomatic that the policy could not be assigned without the consent of defendant. The contract provided for an endorsement of consent on the contract itself. Such written consent could be waived by defendant.[9] Defendant does not claim otherwise. In that respect the facts of this case are distinguishable from Abeln v. Iowa Mutual Lia. Ins. Co. 208 Minn. 582, 585, 295 N. W. 54, 56, where we said:

"* * * It is a general rule that a contract of insurance may not be extended either as to coverage or parties by waiver."

Here the coverage is not extended by waiver. If there is any waiver, it is only as to a written endorsement of the assignment. The case could well rest on the proposition that the assignment was consented to and that lack of *written* endorsement was due entirely to defendant's failure to do that which it agreed to do. If the requirement that the consent be in writing was waived by someone employed by defendant having authority to do so, the assignment obviously would be valid. As a matter of fact, Mrs. Serres testified that, if plaintiff had called again and requested an assignment after the Industrial Credit Company had been paid, they would have gone ahead and transferred it. Her testimony in that regard is as follows:

"Q. What was the purpose of your calling her? Why did you call her?

---

[9]Green v. Minnesota Farmers Mutual Ins. Co. 190 Minn. 109, 251 N. W. 14.

"A.   Well, to know that it actually was paid and that *if the insured called me back to transfer, we could go right ahead and do it.*" (Italics supplied.)

Mrs. Serres' authority to act is established by the unrebutted presumption discussed above. The case then rested upon the determination of whose testimony was to be accepted. The jury accepted plaintiff's version of the telephone conversation. The credibility of the witnesses and weight to be given to their testimony was for them to determine.

We have examined the other assignments of error, including the alleged errors in the court's instructions which deal largely with proof of express authority on the part of Mrs. Serres to act for defendant, and we do not believe that they warrant any further discussion for the reason that they are answered above. We are convinced that the court committed no error in admitting the testimony of plaintiff and that the authority of Mrs. Serres to act for defendant is sufficiently established. It follows that the verdict for plaintiff should stand.

The order denying defendant's motion for judgment notwithstanding the verdict is affirmed, and the order granting a new trial for errors of law is reversed with instructions to reinstate the verdict.