Deborah FOLEY, Appellant,

v.

Roger ALLARD, individually and as trustee for Edward Mattson, R.J. Steichen & Company, Edward Mattson, Respondents.

No. C5–86–2100.

Court of Appeals of Minnesota.

May 12, 1987.

Review Granted July 15, 1987.

Richard L. Hendrickson, Minneapolis, for appellant.

Richard A. Ohlsen, Grand Forks, N.D., for defendant-respondent Edward Mattson.

Gregory J. Holly, Philip T. Colton, Minneapolis, for defendant-respondent R.J. Steichen & Co.

Considered and decided by CRIPPEN, P.J., and FOLEY, and LESLIE, JJ., with oral argument waived.

## OPINION

CRIPPEN, Presiding Judge.

Appellant Deborah Foley brought suit alleging violations of Minnesota securities laws on the part of three defendants: Roger Allard, individually and as trustee for Edward Mattson, Edward Mattson, and respondent R.J. Steichen & Company. Foley eventually obtained a judgment against Allard, individually and as trustee for Edward Mattson, in excess of $40,000. Respondent R.J. Steichen & Company's motion for summary judgment was granted. Foley claimed Steichen aided and abetted Allard and that Allard acted with the apparent authority of a Steichen agent. Foley appeals the summary judgment entered in Steichen's favor. We reverse.

## FACTS

In November 1983, appellant Deborah Foley was introduced to Roger Allard by mutual friends. Friendly relations soon developed between Foley and Allard. Foley socialized with Allard and their mutual friends almost daily until Foley gave money to Allard to invest.

The subject of investments came up the second time Foley and Allard met at the same friends' home. Allard knew Foley had been having some financial difficulty with a piece of property she owned. The person who was buying this property from Foley had defaulted on a contract for deed. Foley had to obtain about $10,000 by December to prevent foreclosure. Allard also knew Foley had borrowed $10,000 from a friend for this purpose. He suggested Foley could improve her financial position through investment. Allard told Foley he would help her out by doubling her money within the month. He further told her he would do this without taking a commission because she was a friend of his friends and he wanted to be a "nice guy."

Foley discussed the offer with mutual friends of her and Allard who had invested with Allard. She was informed of their success with Allard, and her friends and Allard said that he had an office with respondent R.J. Steichen & Company (Steichen). No one ever specifically told Foley that Allard was an agent for or was employed by Steichen. Foley was never given a business card to that effect. However, Allard told Foley that Allard had a conference room, major office and extensive phone privileges with Steichen. Allard gave Foley a telephone number where he could be reached at the Steichen offices. Consequently, Foley believed Allard was Steichen's employee.

Foley decided to invest her $10,000 with Allard, on the condition that the principal never be at risk and that at least the principal be returned to her by the end of the two weeks remaining before the mortgage deadline. Allard agreed and received Foley's personal check for $10,000 on December 7, 1983. He cashed the check the following day and obtained a cashier's check for $9,998.50. Allard had previously opened an account to purchase stock options with Steichen in the name "Ed Mattson c/o Roger Allard." Allard was thus in fact a customer of Steichen, not an agent or employee. Allard deposited Foley's money into this account with Steichen. The cashier's check made no mention of Foley. Allard never opened an account in Foley's name.

Appellant contacted Allard by phone at the Steichen offices several times before and after she gave him her investment in early December 1983. Steichen's receptionist received these calls. When Allard was in she forwarded them to him in the company's "lunch room," where Allard had said he would be. When Allard was out she took a message for him. Steichen's receptionist stated she took calls for Allard because he was a customer of Steichen and had told her he would be receiving calls from his girlfriend. In so doing, Steichen's receptionist was in violation of Steichen's customer phone call procedures. Phone messages for customers were to be transmitted to the customer's broker first and only directly to the customer in the case of an emergency. Steichen's receptionist indicated she was not aware of these procedures.

When the December 15th mortgage deadline neared, Foley discovered Allard had lost $9000 of her original $10,000 investment. She called Steichen and found she did not have an account there. Since she could not meet the mortgage deadline, she was forced to sell her property and lost over $20,000 in equity. She filed suit against Roger Allard, individually and as trustee for Edward Mattson, Edward Mattson, and R.J. Steichen & Company for securities law violations under Minn.Stat. ch. 80A.01. In March 1985, Foley obtained a default judgment against Allard in the amount of $42,338.83, including attorney fees. Foley and respondent Steichen stipulated that any findings of fact, conclusions of law, and judgment against Allard would not have any force against Steichen.

Respondent Steichen moved for summary judgment in its favor, contending Foley had no legally sufficient basis for a liability claim. Foley opposed Steichen's motion, claiming Steichen was liable under Minn. Stat. § 80A.23, subd. 3 for aiding Allard's violation of Minnesota securities laws. Foley claimed Steichen knew, or with the exercise of reasonable care could have known, that their phone answering service to Allard had aided him in violating Minnesota securities laws under section 80A.23. Foley also claimed Steichen was estopped from denying the existence of an agency relationship between Allard and Steichen because Allard had acted with the apparent authority of a Steichen agent. Foley thus claimed Steichen was liable for the actions of its apparent agent, Allard. The trial court found for Steichen and granted summary judgment in its favor. Steichen tendered to the court the remaining funds in the Mattson/Allard account ($3499) and appellant was ultimately awarded these funds.

### ISSUE

Did the trial court improperly grant summary judgment, as there are genuine issues of material fact regarding whether respondent Steichen negligently clothed defendant Allard with the apparent authority to deal with appellant as respondent's agent, and whether respondent aided Allard's violation of securities laws?

### ANALYSIS

On appeal from summary judgment, the function of the appellate court is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Appellant claims Steichen is estopped from denying an agency relationship between Steichen and Allard by the doctrine of "apparent authority." Apparent authority exists if a plaintiff can establish:

1) The principal held the agent out as having authority or knowingly permitted the agent to act on its behalf;

2) The party dealing with the agent had actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and

3) Proof of the agent's apparent authority is found in the conduct of the principal, not the agent.

*Hockemeyer v. Pooler,* 268 Minn. 551, 562, 130 N.W.2d 367, 375 (1964). The trial court applied these requirements and found appellant's claim defective as appellant could "show no actions on the part of Steichen which would indicate a 'holding out' that Allard had authority to act for Steichen." We disagree.

Contradicting a standard of care recognized in its own business office practices, respondent permitted Roger Allard to receive calls made to its place of business. This receipt of calls was evidently one of the primary components in the foundation for a scam.

In examining whether Allard had apparent authority to act for Steichen, the trial court relied on the rule of law that this authority depends wholly on manifestations by the principal. The court cited *Truck Crane Service Co. v. Barr-Nelson, Inc.,* 329 N.W.2d 824 (Minn.1983), where the supreme court found no authority as a matter of law where a company did nothing to charge an employee on the premises with authority to guarantee payment of a claim and where the company president had previously refused to permit the payment. Respondent contends that *Truck Crane* governs the immediate case.

As the supreme court noted in *Truck Crane,* "the result has been different" where a member of the public conducts business by telephone and has "no reasonable basis for questioning the authority" of an employee who answered the telephone. *Id.* at 827 n. 1 (citing *Sauber v. Northland Insurance Co.,* 251 Minn. 237, 244–45, 87 N.W.2d 591, 596–97 (1958)). Respondent insists that the "different" rule, announced in *Sauber,* applies only in the case of an employee answerer. This is a valid observation on the facts in *Sauber,* but wholly disregards the vital rule of law announced there.

The manifestations of a principal include permission for conduct that is knowingly or "negligently" given. *Sauber,* 251 Minn. at 245, 87 N.W.2d at 598. In addition:

[W]here a place of business installs a telephone and invites the public to use it in the transaction of business by listing its name in the telephone directory, one who answers a call at such place of business and undertakes to respond as the agent of the business establishment is presumed to have authority to speak in respect to matters of the general business carried on at such establishment.

*Id.* at 243, 87 N.W.2d at 596 (footnote omitted). A caller has the "right to assume" that "one answering his telephone call" has authority to speak as he does. *Id.* at 244, 87 N.W.2d at 597 (quoting *Gardner v. Hermann,* 116 Minn. 161, 165, 133 N.W. 558, 560 (1911)).

Thus, whether knowingly or negligently permitted, the license to take calls is a manifestation of authority by the principal. Moreover, this evidence not only shows an inference of authority, but creates a presumption of authority that must prevail if not rebutted. *Id.* 251 Minn. at 244, 247, 87 N.W.2d at 597, 598.

The *Sauber* presumption is based on the caller's perceptions, not on real facts. It is not pertinent to the rule to determine whether the answerer has real authority to act, or even whether the answerer is an employee. All that matters is a showing that the place of business was called and that someone at that place answered and purported to act for the business establishment. *Id.* at 244, 87 N.W.2d at 597. Again:

The important question is the identity of the place of business and the fact that

someone at that place answered and purported to act for it.

*Id.* at 247, 87 N.W.2d at 599.

By reason of the *Sauber* presumption, respondent here faces a risk of liability, conditional solely on the fact question of whether it was negligent in permitting Roger Allard to answer a series of calls at its place of business. Evidence of a breach of its own standard of care on the subject of taking calls is enough to require a jury determination of the question of fact. Whether or not appellant's case has sufficient merit to ultimately prevail, she is entitled to present her case to a judicial factfinder.

An analysis of securities law statutes leads to a like conclusion. These laws are aimed at protection of investors. *Bond v. Charlson*, 374 N.W.2d 423, 429 (Minn. 1985). Appellant claims there is a genuine issue of material fact as to Steichen's liability for materially aiding a securities law violator under Minn.Stat. § 80A.23, subd. 3. That statute provides:

> Every person who directly or indirectly controls a person liable under subdivision 1 or 2, every partner, principal executive officer or director of such person, every person occupying a similar status or performing a similar function, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person. There is contribution as in cases of contract among the several persons so liable.

Minn.Stat. § 80A.23, subd. 3 (1986). No liability can be established under this section when the defendant can show that he or she "did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist." *Id.*, subd. 4.

The ruse of taking calls in the offices of respondent was a material part of Allard's scheme to defraud appellant. *Id.*, subd. 3.

Whether respondent aided Allard is a question not unlike the inquiry of whether it manifested his authority. Respondent is bound by what it knew and by what it could have known "in the exercise of reasonable care." *Id.*, subd. 4. This gives rise to a fact issue not unlike the question of whether respondent negligently permitted Allard to take calls at its business offices; both questions require a jury verdict.

## DECISION

A genuine issue of material fact remains on the issues of whether respondent was negligent in allowing defendant Allard to receive telephone calls at its place of business such that respondent should be estopped from denying Allard's agency, and whether respondent aided Allard to violate securities laws.

Reversed.