*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0886**

State of Minnesota,
Respondent,

vs.

David Alan Nielsen,
Appellant

**Filed May 31, 2016
Affirmed
Worke, Judge**

St. Louis County District Court
File No. 69DU-CR-13-2174

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Worke, Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his conviction of felony violation of an order for protection (OFP), arguing that the evidence was insufficient to show that he was the unidentified

sender of the innocuous voicemail message and that the district court abused its discretion by denying his request for a durational departure. We affirm.

## FACTS

On May 22, 2013, E.W. received a phone call. She did not recognize the phone number, so she let the call go to voicemail. E.W. listened to the voicemail message. The caller did not identify himself, but E.W. recognized the voice as that of her ex-boyfriend, appellant David Alan Nielsen. Nielsen stated that he was at the mall waiting to meet E.W., and asked her to bring their two children to see him. At the time, there was an active OFP preventing Nielsen from contacting E.W. After receiving the unexpected call, E.W. reported Nielsen's contact to the police because she was "a little scared." Nielsen was charged with violating the OFP.

At Nielsen's court trial, E.W. testified that during her relationship with Nielsen, they spoke to each other over the phone in excess of 200 times. She testified that Nielsen left her approximately 10-20 voicemail messages. E.W. testified that she recognized Nielsen's voice without him identifying himself based on his accent, word pronunciation, and voice in general. E.W. testified that she was "100 percent" sure that it is Nielsen's voice on the voicemail message.

The district court found Nielsen guilty of violating the OFP, stating:

> [T]his case turns on [E.W.]'s credibility. That is, whether the [s]tate has met its burden of proving beyond a reasonable doubt that . . . Nielsen made contact with [E.W.] in violation [of the OFP] is dependent entirely on [E.W.]'s credibility in identifying his voice.

2

> On that issue, the [c]ourt does find [E.W.] credible. Her demeanor during her testimony convinces the [c]ourt that she is telling the truth, and that the voice on the recording is that of . . . Nielsen.

Nielsen moved for a downward durational departure from the presumptive 30-month executed sentence. Nielsen argued that substantial and compelling circumstances supported the departure because the message was "innocuous, . . . the context suggests that it was expected and invited[,]" and "[c]ollateral information obtained . . . indicates that not only did [he] leave this message, but he in fact met [E.W.] and minor children . . . on that same day."

Nielsen's pre-sentence investigation stated:

> When [Nielsen] was questioned about the current offense, he stated "the Judge should be hung upside down by his feet and have him explain his wrong doing. I wasn't allowed a fair trial. The victim lied her a-- off. The Public Defender, [prosecutor] and the Judge are all in cahoots. I have no guilt in this matter at all, there is no factual basis. I am too emotional about the subject to discuss it."
> . . . .
> [Nielsen] presented himself as a dangerous person who has no respect for the rights of others. He not only takes no responsibility for his actions but actually places himself the victim.

The district court denied Nielsen's motion for a downward departure and imposed the presumptive sentence because Nielsen was not willing to own up to his mistakes and failed to show "entitlement" to a departure. This appeal follows.

3

*Sufficiency of the evidence*

Nielsen argues that the state failed to prove that he left the voicemail message because E.W.'s testimony was the only evidence that it was his voice.

"Whe[n] there is a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the verdict to determine if the evidence was sufficient to permit the [fact-finder] to reach the verdict it did." *State v. Ford*, 539 N.W.2d 214, 225 (Minn. 1995). We assume that the fact-finder believed the state's witnesses and disbelieved contrary evidence. *State v. Huss*, 506 N.W.2d 290, 292 (Minn. 1993).

It is well settled that "a conviction can rest on the uncorroborated testimony of a single . . . witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). A victim's identification of her assailant's voice is "direct evidence sufficient to present a fact question for the [fact-finder]." *State v. Otten*, 292 Minn. 493, 494, 195 N.W.2d 590, 591 (1972); *Sauber v. Northland Ins. Co.*, 251 Minn. 237, 243, 87 N.W.2d 591, 596 (1958) ("On the issue of identification, it is always sufficient if it can be shown that the person calling can identify the voice of the person speaking at the other end of the line."). Voice-identification evidence, like any type of identification evidence, is generally a matter of credibility for the fact-finder to decide. *State v. Doppler*, 590 N.W.2d 627, 635 (Minn. 1999) ("Deciding the credibility of witnesses is generally the exclusive province of the [fact-finder].").

Here, E.W. testified that Nielsen left the voicemail message. She testified that she recognized Nielsen's voice without him identifying himself based on his voice and prior phone conversations and voicemail messages. E.W. testified that she was "100 percent" sure that the voice on the recording is Nielsen's. The district court found E.W.'s identification of Nielsen's voice to be credible. Therefore, the evidence supports Nielsen's OFP-violation conviction.

### *Durational departure*

Nielsen also argues that the district court abused its discretion by denying his request for a downward durational departure.

"[Appellate courts] afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). Indeed, an appellate court will not ordinarily interfere with a sentence that is within the presumptive range even if there are grounds that justify a departure. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006); *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981) ("[I]t would be a rare case which would warrant reversal of the refusal to depart.").

The Minnesota Sentencing Guidelines prescribe a sentence and a range of sentences that are presumed to be appropriate. *Soto*, 855 N.W.2d at 308. Thus, "a [district] court has no discretion to depart from the sentencing guidelines unless aggravating or mitigating factors are present." *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999). In exercising its discretion, a district court may grant a downward durational departure if it finds that the defendant's conduct was significantly "less serious than that

5

typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). Accordingly, in considering whether to grant a durational departure, a district court considers the nature of the offense rather than the circumstances of the offender. *State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998), *review denied* (Minn. Mar. 19, 1998). But, although a defendant's remorse does not generally bear on a decision whether to depart durationally, "there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the . . . seriousness of the conduct on which the conviction was based." *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984).

Nielsen argues that his offense was significantly less serious than the typical OFP violation because it was electronic contact versus personal contact, and the content was innocuous rather than threatening or demeaning. Additionally, Nielsen claims that the record indicates that E.W. was voluntarily having contact with him. Nielsen asserts that the district court failed to consider these factors, but the district court considered, and rejected, the alleged mitigating factors. The district court stated that E.W. testified that she feared Nielsen, and dismissed Nielsen's claim that E.W. voluntarily met him.

Nielsen also claims that the district court's denial of his request for a departure because he "was not willing to own up to what he did" and failed to show "entitlement" to a departure are "legally insufficient reasons to deny a departure." However, this is an appropriate case in which the district court considered Nielsen's unwillingness to "own up" to his mistakes, in other words, his lack of remorse is relevant to the seriousness of the conduct. *See id.* The record shows that Nielsen failed to take any responsibility and

6

blamed E.W. for his conviction. Nielsen may not be satisfied with the district court's reasons for denying his request for a durational departure, but "the district court is not required to explain its reasons for imposing a presumptive sentence." *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013). This is not the rare case in which reversal of imposition of the presumptive sentence is warranted. The district court did not abuse its discretion.

### *Pro se brief*

In his pro se brief, Nielsen claims that his attorney was ineffective for making evidence disappear, asking the victim only one question during cross-examination, failing to object, failing to raise an alibi defense, leaving him stranded in a strange town, and separating him from his witnesses before trial.

This court will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority. *See State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (stating that appellate courts will not consider claims set out in a pro se supplemental brief that include "no argument or citation to legal authority in support of the allegations"); *see also Louden v. Louden*, 221 Minn. 338, 339, 22 N.W.2d 164, 166 (1946) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief . . . will not be considered on appeal unless prejudicial error is obvious on mere inspection."). Because Nielsen's pro se brief lacks supportive arguments and legal authority, and because no prejudicial error "is obvious on mere inspection," his pro se claims are forfeited.

**Affirmed.**

7