Linda T. LOPER, Plaintiff,

v.

ADVEST, INC., Defendant.

Civ. A. No. 84–1819.

United States District Court,
W.D. Pennsylvania.

Sept. 6, 1985.

Alan C. Swensen, Swensen & Perer, Pittsburgh, Pa., for plaintiff.

William S. Smith, Gondelman, Baxter, McVerry, Mulvihill, Smith, Yatch & Trimm, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, Chief Judge.

Plaintiff has sued Defendant in this action for violations of federal securities law and various state laws in connection with the alleged wrongful liquidation of Plaintiff's margin account. Presently before us is Defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Defendant moves, alternatively, for a more definite statement pursuant to Rule 12(e).

Plaintiff, Linda Loper, is a citizen of Pennsylvania. Defendant Advest, Inc. ("Advest") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Plaintiff's claims are based on § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240, 10b–5 (1984), breach of contract, misrepresentation, and misrepresentation through nondisclosure. Plaintiff demands actual and punitive damages, as well as attorneys' fees. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332 and federal question jurisdiction, 28 U.S.C. § 1331.

FACTS

Advest is a brokerage firm which conducts securities transactions on behalf of its customers. It is a member of the New York Stock Exchange and is licensed as a broker-dealer by the Securities and Exchange Commission.

The amended complaint alleges that, on or about November 28, 1983, Plaintiff opened a margin account with Advest. Amended Complaint, ¶¶ 5, 6. On or about February 29, 1984, Plaintiff purchased 12,-

000 shares of common stock of Gulf Oil Corporation ("Gulf") through Advest, acting as Plaintiff's broker. *Id.* ¶ 7. On or about the same date, Plaintiff also purchased 120 Gulf "put" option contracts and sold 120 Gulf "call" option contracts. *Id.* ¶ 8.

Plaintiff alleges that, subsequent to these transactions, Defendant made a margin call on Plaintiff, allegedly advising Plaintiff that she had to deposit money or property in her account by March 9, 1984 to cover the stock purchase, and by March 12, 1984 to cover the put and call option contracts. Id. ¶¶ 10, 11. Plaintiff alleges that this notification was made March 2, 1984.

Plaintiff alleges that, upon receipt of the margin call, she advised Defendant that all monies necessary to meet the margin requirements would be deposited in her account on March 7, 1984; she allegedly directed Defendant not to liquidate any open positions prior to that date. *Id.* ¶ 12. Plaintiff alleges that Advest represented that this was satisfactory and that no action would be taken on the account before March 7.

Plaintiff further alleges that, on March 1, 1984, prior to the margin call on March 2, Defendant liquidated the put and call options at a loss to Plaintiff. *Id.* ¶¶ 11, 13. Plaintiff then alleges that on or about March 2, 1984, Defendant liquidated "all of Plaintiff's open positions." *Id.* ¶¶ 13, 14. The stock margin account was also liquidated at a loss to Plaintiff. *Id.* ¶ 16.

Shortly after the liquidation, the price of Gulf common stock increased significantly. A tender offer was made by Gulf to its stockholders on March 5, 1984 to purchase the stock at a price significantly higher than that Plaintiff paid.

Plaintiff alleges that Advest falsely represented a material fact in violation of § 10(b) and Rule 10b–5 by advising Plaintiff that her positions would not be liquidated if she satisfied the margin calls by March 9 and 12, respectively, and assuring Plaintiff that, in no event, would action be taken before March 7, 1984. Plaintiff's

accounts were apparently liquidated on March 1 and 2, 1984.

Defendant has moved 1) to dismiss Count 1, the federal securities claim, for failure to state a claim; 2) to dismiss the state law claims pursuant to the arbitration provision of the Customer Agreement; and, alternatively, for a more definite statement pursuant to Fed.R.Civ.P. 12(e). Defendant moves the court to stay or dismiss the Complaint pending outcome of the arbitration proceedings, if arbitration is ordered.

*The Federal Securities Claim*

Defendant argues that Count I fails to state a cause of action for several reasons: first, Defendant argues that Plaintiff never alleged that she was ready, willing and able to meet the margin call on March 9, 1984 with respect to the Gulf common stock or on March 12, 1984 with respect to the put and call options. Motion to Dismiss, at 2. Second, Defendant argues that pursuant to the terms of the Customer Agreement, Defendant had the right to sell any and all securities in Plaintiff's accounts without demand for margin or additional margin, notice of sale or purchase, or any other notice or advertisement. *Id.* (citing Customer Agreement, ¶ 6, Amended Complaint, Ex. A). Third, Defendant argues that the Agreement further provided that any prior demand, call or notice of the time and place of any such sale or purchase shall not be considered a waiver of the Defendant's right to sell or buy without demand, call or notice. *Id.* Fourth, Defendant argues that the alleged reneging of an oral promise by Defendant does not constitute a violation of § 10(b). Finally, Defendant argues that Plaintiff's complaint establishes that she did not rely on Defendant's misrepresentation because she alleges that the securities were sold on March 1 or 2, prior to the alleged misrepresentation on March 2, 1984. Amendment to Defendant's Motion to Dismiss, at 1–2.

DISCUSSION

In evaluating a motion to dismiss, the allegations of the complaint and all reasonable inferences must be accepted as true and viewed in the light most favorable to

the nonmoving party. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Empire Abrasive Equipment Corp. v. H.H. Watson, Inc.,* 567 F.2d 554, 557 (3d Cir.1977). A complaint should not be dismissed unless it appears that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ The gist of Plaintiff's Complaint is the alleged wrongful liquidation of her margin account. The "fraud" alleged is the statement of the broker that he would not liquidate Plaintiff's account before a certain date, in light of the contemporaneous or subsequent liquidation.

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful "to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention" of SEC rules or regulations. 15 U.S.C. § 78j(b) (1982). Here, Plaintiff argues a violation of Rule 10b–5, which states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any ad, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1984).

Assuming, as we must, all the facts alleged as true, we hold that, on the facts before us, no claim is stated for violation of the federal securities laws; at most, Plaintiff has stated a claim for breach of contract. The facts alleged point to no acts which are either "manipulative" or "deceptive" as those terms are used and defined in cases construing § 10(b) and Rule 10b–5. *See Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1565–68 (E.D.N.Y.1985); *Pross v. Baird Patrick & Co., Inc.,* 585 F.Supp. 1456, 1459–61 (S.D.N.Y.1984) (citing cases); *Blanes v. Paine Webber Jackson & Curtis, Inc.,* 593 F.Supp. 458, 462 (D.P.R.1984); *Lichter v. Paine, Webber, Jackson & Curtis, Inc.,* 570 F.Supp. 533, 535 (N.D.Ill.1983); *Zerman v. Jacobs,* 510 F.Supp. 132, 134–35 (S.D.N.Y.), *aff'd,* 672 F.2d 901 (2d Cir.1981); *Cortlandt v. E.F. Hutton, Inc.,* 491 F.Supp. 1, 4 (S.D.N.Y. 1979).

In so finding, we do not hold that securities violations cannot occur in the management of margin accounts, or that wrongful liquidations of such accounts cannot play a part in securities frauds. *Cf. Angelastro v. Prudential-Bache Sec. Inc.,* 764 F.2d 939, 942 (3d Cir.1985) (finding misrepresentation or nondisclosure of credit terms of margin account "in connection with" purchase or sale of security; purpose underlying § 10(b) and rules adopted under section is to insure that investors obtain disclosure of material facts in connection with their investment decisions regarding the purchase or sale of securities); *Modern Settings v. Prudential-Bache Sec. Inc.,* 603 F.Supp. 370, 373–75 (S.D.N.Y.1985) (plaintiffs stated claim for violations of federal securities laws where alleged wrongful liquidations of plaintiff's margin account part of scheme by which defendants attempted to depress and artificially manipulate market in order to then purchase undervalued securities to sell at profit).

Here, however, the SEC claim doesn't pass muster.

*Arbitration of State Law Claims*

The Customer Agreement between Plaintiff and Defendant provides that all disputes, with the exception of those arising under the federal securities laws, shall be submitted to arbitration. *See* Customer

Agreement, ¶ 13, Amended Complaint, Ex. A.

■ The Federal Arbitration Act, 9 U.S.C. § 1–14, reflects a strong national policy in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983); *Sharon Steel Corp. v. Jewell Coal & Coke Co.,* 735 F.2d 775, 777 (3d Cir.1984). The Act sets forth two prerequisites for arbitration. First, the agreement must be in writing and must involve a maritime transaction or contract evidencing a transaction in commerce. 9 U.S.C. § 2. *See Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 202, 76 S.Ct. 273, 275, 100 L.Ed. 199, 204 (1956). Second, the underlying dispute must involve an issue which, under the terms of the arbitration clause, is referable to arbitration. 9 U.S.C. § 3. Both requirements are satisfied in this case: the Customer Agreement is in writing, *see* Amended Complaint, Ex. A. ¶ 13, and the transaction is clearly one involving commerce.

In *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) the Supreme Court held that, when a complaint raises both federal securities claims and pendent state claims, the Federal Arbitration Act requires district courts to compel arbitration of pendent arbitrable state claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. At ——, 105 S.Ct. at 1242, 84 L.Ed.2d at 165. Accordingly, we will direct that Counts 2 to 6 be dismissed and the parties proceed to arbitration.