Deborah FOLEY, Respondent,

v.

Roger ALLARD, individually and as trustee for Edward Mattson, Respondent.

R.J. Steichen & Company, Petitioner, Appellant.

Edward Mattson, Respondent.

No. C5–86–2100.

Supreme Court of Minnesota.

July 29, 1988.

Gregory J. Holly, Philip T. Colton, Minneapolis, for petitioner, appellant.

Richard A. Ohlsen, Grand Forks, N.D., for Edward Mattson.

Richard L. Hendrickson, Minneapolis, for Deborah Foley.

WAHL, Justice.

This case arises under the Minnesota Securities Act, specifically Minn.Stat. § 80A.23, subds. 3, 4 (1986) governing secondary liability. Respondent Deborah Foley brought suit against Roger Allard and R.J. Steichen & Company for securities violations. She alleged that Allard, posing as a Steichen broker, induced her to invest, and then lost, most of her $10,000 investment. A default judgment against Allard in the amount of $42,338.83 was entered March 6, 1985. Foley further alleged that Steichen had materially aided Allard in his fraudulent scheme by allowing him to receive phone calls and conduct business on its premises. Alternatively, she pleaded that Steichen had negligently clothed Allard in apparent authority to transact business, and was estopped from denying an agency relationship. The district court granted Steichen's motion for summary judgment on June 20, 1986, finding that no specific facts existed which would create a genuine issue for trial under the theory of secondary liability.

The court of appeals reversed, 405 N.W.2d 503, holding that summary judgment was precluded by genuine issues of material fact regarding whether Steichen was negligent in allowing Allard to receive calls at its place of business such that Steichen should be estopped from denying Allard's agency, and whether Steichen aided Allard in his violation of the securities laws.

Steichen now seeks review of the court of appeals' decision. We reverse.

The facts are as follows: Deborah Foley met Roger Allard through mutual friends in late November, 1983. Between then and December 7, 1983, she saw him almost daily, usually at their friends' home where he was a houseguest.

About this same time, Foley had obtained $10,000 to forestall foreclosure on residential property which she had sold on a contract for deed. The purchaser had defaulted on the mortgage payments, and she needed to produce the money by December 15, 1983 in order to save the house. Allard learned of this situation and, at their second meeting, offered to double her money through stock investments. He guaranteed that there was "no risk" and that he would return at least her principal amount prior to December 15.

Although friends indicated to Foley that they had placed investments with Allard, and he identified himself to her as a "securities dealer," neither he nor anyone else informed her that he was employed or formally affiliated with Steichen as a stockbroker. She was told only that he had a conference room with a "major desk" and phone privileges at the brokerage. In actuality, Allard was Steichen's customer. However, he did have trading authority over a Steichen account in the name of Edward Mattson.

Foley wrote Allard a personal check for $10,000, payable to Allard, on December 7, 1983, because Allard had told her that Steichen would not take a personal check made out to them. After verifying the check's authenticity with Foley, the bank issued Allard a cashier's check which he deposited in the Mattson account.

About December 15, 1983, Allard informed Foley that he had lost her money. Foley then called Steichen in order to get a record of her loss. She spoke with both

Shelley Geenen, a sales assistant, and Jack Feltl, a broker, who informed her that she had no account with Steichen and that they knew nothing about her transaction with Allard.

Steichen's receptionist recalled a total of five to seven calls for Allard between the beginning of November, 1983 and December 15, 1983, all from Deborah Foley. However, only two of those calls were placed before Foley gave Allard her money. The first call was made to arrange transportation for Allard and a friend; no business was discussed or transacted. Allard was not in when Foley called the second time.

Although Steichen's general policy was to transmit phone messages to customers through their broker, there is no indication that this policy was formal, written or known by its staff. Steichen's receptionist admitted transferring calls to Allard in the company lunchroom and taking messages when he was not available. However, Allard had told her that he was expecting calls from his girlfriend, and she believed that she was acting appropriately in following his instructions.

Foley received no business cards or documents identifying any affiliation between Allard and Steichen. She never visited the Steichen offices. She and Allard did not transact any business during calls made and/or received on Steichen phones. Prior to her investment, she never informed anyone at Steichen of her relationship with Allard, nor did anyone at Steichen know of the circumstances surrounding her investment or her need for the $10,000. Other than the fact that she knew that friends "used" R.J. Steichen, she did nothing to investigate the company beyond checking to see if they were listed in the yellow pages.

The appeal raises these issues: whether the district court properly granted summary judgment dismissing respondent's aiding and abetting claim under Minn.Stat. § 80A.23, subds. 3, 4 (1986); and, whether the district court properly granted summary judgment dismissing respondent's claim of apparent authority.

## I.

The first issue is whether the district court properly granted summary judgment dismissing Foley's aiding and abetting claim under Minn.Stat. § 80A.23, subds. 3, 4 (1986). In an appeal from summary judgment we, as an appellate court, review the record, for the purpose of resolving two issues: (1) whether there are any material issues of fact to be determined, and (2) whether the trial court erred in its application of the law. *Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v. St. Paul Mercury Indemnity Co.*, 268 Minn. 390, 406, 129 N.W.2d 777, 788 (1964). A material fact is one whose resolution would affect the outcome of the case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). We view the evidence in the light most favorable to the nonmoving party. *Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955).

For purposes of the summary judgment motion and of this appeal, Steichen accepted as true all of Foley's allegations. Thus, we must affirm the district court's grant of summary judgment if the law as applied to the facts indicates that Steichen is entitled to prevail.

Both parties agree that Steichen's liability under an aiding and abetting claim is governed by Minn.Stat. § 80A.23, subd. 3 (1986). That section provides in relevant part:

> [E]very broker-dealer or agent who materially aids in the act or transaction constituting the violation, [is] also liable jointly and severally with and to the same extent as [the primary violator].

No liability occurs, however, if Steichen can show:

> That [it] did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist.

*Id.* subd. 4.

Foley argues first that the court of appeals has determined that Minn.Stat. § 80A.01 (1986), which establishes a pri-

mary violation, is a derivative of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77g(a) (1982) and as such does not require scienter. *Sprangers v. Interactive Technologies, Inc.*, 394 N.W.2d 498 (Minn. App.1986), *pet. for rev. denied* (Minn., November 19, 1986).[1] Further, she argues that "reasonable care," as used in Minn. Stat. § 80A.23, subd. 4 (1986), creates a negligence standard. She maintains the inference can be drawn that if Steichen had followed its own phone policy, it would have discovered Allard's fraudulent scheme. Finally, she asserts that, whenever fair-minded people can reach different conclusions or draw different inferences from undisputed facts, a negligence question is always a question for the jury, precluding the award of summary judgment.

We have not construed section 80A.23, subds. 3 or 4, as Steichen notes. However, we are not without precedent to guide our decision. Minn.Stat. § 80A.31 (1980) provides that the Minnesota Securities Act is to be construed so as to "coordinate the interpretation of sections 80A.01 to 80A.31 with the related federal regulation." We

have determined, therefore, that federal case law is of considerable value as precedent in deciding issues arising under the act. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 534 (Minn.1986). Minn.Stat. § 80A.01, under which Allard's primary violation was established, is Minnesota's counterpart to Rule 10b–5, 17 C.F.R. § 240.10b–5 (1987).[2] This point is critical because federal case law has established federal standards for aiding and abetting violations of Rule 10b–5.

█ The Eighth Circuit Court of Appeals and other federal circuit courts of appeal follow a three-prong test to establish aiding and abetting liability under Rule 10b–5.[3] The test includes the following requirements:

(1) The existence of a securities law violation by the primary party, as opposed to the aiding and abetting party;

(2) Knowledge of the violation on the part of the aider and abetter; and

(3) "Substantial assistance" by the aider and abetter in the achievement of a primary violation.

1. In *Aaron v. Securities and Exchange Comm'n.*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed. 2d 611 (1980). The United States Supreme Court held that scienter was not required by §§ 17(a)(2) or (a)(3) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982). These federal provisions are roughly equivalent to our Minn. Stat. § 80A.01(b), (c) (1986). However, the *Aaron* court held that scienter *is* required to establish liability under § 17(a)(1) which is equivalent to our § 80A.01(a). *Aaron*, 446 U.S. at 697, 100 S.Ct. at 1956. Nonetheless, the *Sprangers* analysis is not particularly enlightening to the present case, since *Sprangers* made no reference to secondary liability. Nor has it been established that the standards for the liability of a secondary violator are identical to that required for finding a primary violation.

2. Minn.Stat. § 80A.01 provides: It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Rule 10b–5 provides: It shall be unlawful for any person, directly or indirectly, by the use of

any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

3. *Stokes v. Lokken*, 644 F.2d 779, 782–83 (8th Cir.1981). *See also Investors, Research Corp. v. Securities and Exchange Commission*, 628 F.2d 168, 177 (D.C.Cir.) *cert. denied*, 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980); *ITT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2nd Cir.1980); *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 47–48 (2nd Cir.) *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–97 (5th Cir.1975); *Marbury Management, Inc. v. Kohn*, 470 F.Supp. 509, 515 (S.D.N.Y.1979), *aff'd. in part, rev'd. in part on other grounds*, 629 F.2d 705 (2nd Cir.) *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

The Eighth Circuit suggests that the second and third factors must be considered relative to one another, i.e., "where there is a minimal showing of substantial assistance, a greater showing of scienter [of knowledge] is required." *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir.1985) *cert. denied sub nom. Metge v. Bankers Trust Co.*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (*citing Woodward*, 522 F.2d at 95.) ["S]ubstantial assistance" requires a showing of "substantial causal connection between the culpable conduct of the alleged aider and abetter and the harm to the plaintiff." *Metge*, 762 F.2d at 624 (*citing Mendelsohn v. Capital Underwriters Inc.*, 490 F.Supp. 1069, 1084 (N.D.Cal. 1979)).

■ We adopt the federal three-prong test and apply it to the facts of the instant case. Although conceding a primary violation by Allard, in satisfaction of the first prong, Steichen had no knowledge of the violation. Foley admits that no one at Steichen knew of her investment or the circumstances surrounding the transaction with Allard. Nor did anyone at Steichen know that Allard was suggesting that he was employed by Steichen. The facts do not support Foley's contention that Steichen could have known of the violation had they exercised reasonable care. To support this argument, she relies on Steichen's general practice regarding customers' incoming calls. Steichen, in interrogatory responses, described a policy whereby customers' phone messages are usually transmitted to the customer through his broker. Under special circumstances calls are directly relayed to customers. Given the fact that Allard announced that he was expecting calls from his girl friend, it is likely that the receptionist would have interpreted this as a "special circumstance." In any event, Steichen described an informal policy that was apparently not well known, and certainly not relied upon by Foley before she transacted business with Allard. Further, even if, as a matter of law, Steichen were held to an obligation to internally monitor its customers' transactions, the account into which Allard deposited Foley's money was in Mattson's name. The check which

he deposited in that account did not indicate a remitter and made no mention of Foley.

Regarding the "substantial assistance" prong of the test, Foley bases her case against Steichen on three to four phone calls received by their receptionist for Allard. Only two of the calls were made prior to Foley's investment; one of the two calls was not completed, and the remaining call focused on personal business. Thus, no business was actually transacted in any of these calls. Further, Foley fails to establish a substantial causal connection between the phone calls and her investment loss. The fact was that she was seeing Allard daily; he was a good friend of mutual friends who had wholeheartedly endorsed him to her. She had undoubtedly established sufficient confidence in him to cause these two phone calls to be irrelevant to the ultimate and unfortunate investment transaction. Under the three-prong test, Foley has not established Steichen's secondary liability.

Finally, a negligence theory is inapplicable here because Foley alleges no duty owed her by Steichen, one of the necessary elements to maintain a claim for negligence. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). Nor is the question of negligence always a question for the jury. This court has held that in a negligence case, summary judgment may be entered where material facts are undisputed and as a matter of law compel only one conclusion. *Sauter*, 244 Minn. at 486, 70 N.W.2d at 354.

■ The trial court in the present case correctly concluded that liability under the Minnesota statute is not strict. In the absence of any formal standard or construction adopted by this court, the trial court applied the literal language of subdivisions 3 and 4 to determine whether Steichen knew or in the exercise of reasonable care could have known of Allard's violation. In determining that Foley did not establish evidence which created a genuine issue for trial on the theory of secondary liability, the trial court considered the same facts and reached the same conclusions as would

be inherent under an analysis based on the federal test for aiding and abetting liability. We hold that the trial court properly granted summary judgment to Steichen and dismissed the aiding and abetting claim under Minn.Stat. § 80A.23, subds. 3, 4 (1986).

## II.

■ The second issue is whether the district court properly granted summary judgment dismissing respondent's claim of apparent authority. Foley argues that Steichen negligently clothed Allard in apparent authority and should, therefore, be estopped from denying an agency relationship with Allard. Apparent authority is that authority which a principal holds an agent out as possessing, or knowingly permits an agent to assume. The doctrine is based on the conduct of the principal, not the conduct of the agent. *See generally* 1A Dunnell Minn.Digest 2d *Agency* § 2.02 (3d ed. 1982). We have set out the requirements of apparent authority thus:

> The principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf; furthermore, the party dealing with the agent must have actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and the proof of the agent's authority must be found in the conduct of the principal, not the agent.

*Hockemeyer v. Pooler*, 268 Minn. 551, 562, 130 N.W.2d 367, 375 (1964).

Both parties in the present case agree on the elements of apparent authority as established in *Hockemeyer*, but disagree on the interpretation that should attach to Steichen's conduct in allowing Allard to receive calls at their place of business. Steichen argues that this court's decision in *Truck Crane Serv. Co. v. Barr–Nelson, Inc.*, 329 N.W.2d 824 (Minn.1983), is dispositive of the apparent authority issue. Steichen relies primarily on the assertion in *Truck Crane* that a party who deals with an agent is held to a duty of reasonable

investigation regarding that agent's authority. *Id.* at 827.

On the other hand, Foley argues that *Sauber v. Northland Insurance Co.*, 251 Minn. 237, 245–46, 87 N.W.2d 591, 598 (1958) where this court held that apparent authority existed by virtue of one telephone call, governs. She asserts that *Truck Crane* is distinguishable in that the plaintiff there was put on notice to inquire into the employee's authority by virtue of Barr–Nelson's denial of liability. By virtue of the fact that in this case her calls were connected to Allard, Foley asserts that the only inference she could have reached is that he was Steichen's agent. Alternatively, she argues that she fulfilled the duty of inquiry by calling Steichen and asking for Allard.

In *Truck Crane*, Barr–Nelson had denied liability for the debts which a subcontractor owed Truck Crane. Nevertheless, Truck Crane attempted to negotiate a payment guarantee from Barr–Nelson, the general contractor, over the telephone with Victor Barr, brother of the company's chief executive officer. Victor was a clerical employee who had no authority to contract for the company. Despite the fact that he had previously been the company's secretary-treasurer, and no steps had been taken to inform Truck Crane that he no longer held that office, this court held that once he stepped out of his permitted clerical role, the law of agency protected the company from liability. *Truck Crane*, 329 N.W.2d at 827.

On the other hand, in *Sauber*, we held that a presumption of apparent authority was raised by the fact that an employee answered the business phone and purported to act for the business. *Sauber*, 251 Minn. at 245–46, 87 N.W.2d at 598. We stated that "when an employee of the business place answers the telephone at such established place of business and purports to act for such concern, a presumption arises that such person has authority to act." *Id.* at 244, 87 N.W.2d at 597. Under the facts of that case, however, the insurer's agent had the authority to answer inquiries regarding insurance policies and

had assured Sauber that he could drive the car with a transferred insurance policy. Thus, any "reasonable basis" that he may have had to inquire regarding her authority was removed. *Id.* at 239, 87 N.W.2d at 594. *See Truck Crane* 329 N.W.2d at 827, n. 1. The *Sauber* holding is made clearer by reference to another insurance case, *Gardner v. Hermann,* 116 Minn. 161, 133 N.W. 558 (1911). On very similar facts, the *Gardner* court found apparent authority, but indicated that the result would be different if the telephone conversation had been carried on with a "mere switchboard operator or janitor, with no authority * * *." *Id.* at 165, 133 N.W. at 560. In any case, the *Sauber* court did not extend the principal's liability to non-employees.

■ In the instant case, since Allard was neither an employee or agent of Steichen's, and Foley had no assurances that Allard could act on behalf of Steichen, *Truck Crane* governs the determination of apparent authority. In *Truck Crane* we found no affirmative course of conduct by Barr–Nelson which would constitute a holding out of Victor Barr as their authorized agent. We also found no facts that established any reliance by Truck Crane on the acts of Barr–Nelson. Furthermore, we determined that "[e]very person who undertakes to deal with an agent is put on inquiry * * *" *Truck Crane,* 329 N.W.2d at 827 (*quoting West Concord Conservation Club, Inc. v. Chilson,* 306 N.W.2d 893, 896 (Minn.1981)).

■ In the present case, we find no evidence of affirmative conduct on Steichen's part holding out Allard as its authorized agent. Steichen's customers, including Allard, were merely permitted to receive calls. Nor is there any evidence that Foley relied on or even knew of Steichen's general policy of transmitting telephone messages to customers through their brokers. Finally, Foley did not discharge her duty to inquire into Allard's authority. The fact that Allard gave her no records or documents, that she made her check payable directly to Allard, that she received assurances of "no risk," and that she was charged no commission were all highly ir-

regular activities that would have acted as signals to a person of ordinary prudence.

Although Foley had not previously invested in stocks, she was not without business acumen. She had bought and sold residential properties and had acted as a rental agent. It is reasonable to conclude that she had, at a minimum, learned the value of documentation. Professionally, she represented U.S. West Direct, selling "yellow page" space to businesses. She knew that businesses occasionally provided phone lines for their customers, and admitted that she had used such phones herself when visiting clients.

The only question for this court to decide is whether the trial court erred in its application of the law to the undisputed facts. We hold that the district ·court properly granted summary judgment to Steichen dismissing the claim of apparent authority.

We reverse the decision of the court of appeals and reinstate the order of the district court granting summary judgment for Steichen.

Reversed; judgment of district court reinstated.