**Stanley M. DAVIS, Appellant,**

v.

**MIDWEST DISCOUNT SECURITIES, INC., et al., Respondents.**

No. C9–88–2329.

Court of Appeals of Minnesota.

May 2, 1989.

W.M. Gustafson, MacKenzie, Gustafson, Lucas & Riley, Ltd., St. Peter, for appellant.

Michael D. Olafson, Lindquist & Vennum, Minneapolis, for respondents.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and SHORT, JJ.

## OPINION

SHORT, Judge.

Stanley M. Davis appeals the trial court's granting of summary judgment in favor of several brokerage houses and an officer of one of the brokerage houses. Appellant claims that (1) there are fact issues in dispute which preclude summary judgment and (2) the trial court erred in denying his motion to amend his complaint. Respondents argue that the trial court abused its discretion in denying their request for fees and costs. We reverse the grant of summary judgment only as to respondents Midwest and Reuben for negligence and breach of fiduciary duty, and affirm the trial court's decision in all other respects.

## FACTS

In March of 1982, appellant opened a margin account with Midwest Discount Securities, Inc. (Midwest). Federal regulations require that the investor's account maintain a certain percentage of the stock's purchase price in the account. *See* Banks and Banking, 12 C.F.R. §§ 220.4(b) and 220.18 (1988). However, brokerage houses may impose stricter maintenance requirements. If the account falls below the percentage value specified in the margin agreement, the broker issues the investor a "margin call." If a margin call is not met, the broker is authorized to sell the investor's securities in order to restore the required balance. Appellant's contract with Midwest was a typical margin agreement containing these standardized terms. He had a high concentration of stock in a single company, Mentor Corporation (Mentor).

In September of 1983, Midwest notified its customers (including appellant) that it could no longer handle margin accounts. Investors were told that they could have their accounts cleared at respondent Piper, Jaffray & Hopwood, Inc. (PJH), placed with another broker of their choice, or liquidated. Appellant did not advise Midwest which option he preferred. Midwest placed appellant's account at PJH for clearing.

PJH cleared appellant's account from September 28, 1983 to February 22, 1984. He received PJH's monthly account statements. As of October 28, 1983, appellant's account had a market value of $781,847.25. His debt balance was $515,857.53. The equity in the account was $265,989.53 or 34 percent (PJH's maintenance requirement was 30 percent). The account included 48,500 shares of Mentor.

During November of 1983, Mentor stock declined, causing appellant's margin to plunge. PJH issued margin calls to appellant on November 18, 21, 22 and 23, 1983. Appellant did nothing about these margin calls. However, respondent Ben Reuben (Reuben), an officer of Midwest, placed stock in appellant's account at PJH.

In February of 1984, PJH returned Reuben's stock to Midwest. Appellant also received a margin call in February, but failed to respond. PJH sold 5,000 shares of appellant's Mentor stock, and the sale proceeds were applied to reduce his debt to PJH. Appellant received a confirmation of the sale from PJH. He did not contact PJH or challenge the terms of the sale.

In February of 1984, appellant signed a customer agreement transferring his account from PJH to Pagel, Inc. (Pagel). Appellant's account was at Pagel from February to mid-June of 1984. On February 29, 1984, appellant's account had a market value of $750,675.75. His debit balance was $551,813.16. The equity in the account was $198,862.59 or 26 percent (Pagel's maintenance requirement was 35 percent). Appellant's account steadily plummeted in value while it was at Pagel. Pagel sent him margin calls in March, April and May. Appellant admits that he received the calls, but did not respond to them. He alleges that George Wasson, his personal broker at Midwest, told him that Reuben's stock continued to cover his account. However, Pagel, orally and through its written statements, advised appellant that Reuben's stock was not used to calculate the margin. Because appellant failed to pay the necessary funds to balance his account, Pagel began selling appellant's stock. Ultimately, $43,050 in shares were sold.

In September of 1985, more than a year after the last sale of the stock from his account and at a time when the value of Mentor stock had greatly appreciated, appellant brought an action against Reuben, Pagel, Midwest and PJH. Appellant claims he is entitled to have his position reinstated at the present appreciated value of the Mentor stock because of the fraud, negligence, conversion and breach of fiduciary duty by respondents. After discovery was completed, respondents moved for summary judgment and for attorney fees and costs. Appellant moved to amend his complaint. The trial court granted respondents' motion for summary judgment, but denied their requests for attorney fees as well as appellant's motion to amend his complaint.

## ISSUES

I. Did the trial court properly grant respondents' motions for summary judgment on all of the claims made by appellant?

II. Did the trial court err in denying appellant's motion to amend the complaint?

III. Did the trial court abuse its discretion by denying respondents' request for attorney fees and costs?

## ANALYSIS

### I.

In reviewing an order granting summary judgment, this court applies the same standard as the trial court and must determine (1) whether there are any genuine issues of material fact; and (2) whether the trial court erred in its application of law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the nonmoving party. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982). When the moving party has met its burden of demonstrating that no genuine issue of fact exists, then the burden of persuasion shifts to the opposing party to show facts that demonstrate a genuine factual dispute. Minn.R.Civ.P. 56.05. Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Appellant sued respondents under the theories of (a) fraud and misrepresentation, (b) negligence, (c) conversion, and (d) breach of fiduciary duty. The trial court granted summary judgment for respondents because appellant failed to establish essential legal elements of his case.

### A. Fraud and Misrepresentation

■ To prove fraudulent misrepresentation, the plaintiff must prove that the defendant falsely represented a past or present fact material to causing the alleged harm. *Florenzano v. Olson*, 387 N.W.2d 168, 174 n. 4 (Minn.1986). Neither Pagel nor PJH misrepresented the status of appellant's account; to the contrary, both sent him regular statements, and issued appropriate margin calls before selling his stock. While it is true that Reuben did place stock in appellant's account to provide security for PJH and to help appellant avoid a margin call, he did not give appellant false information about what he had done or his motives for doing it. Even if Reuben had promised that his stock would continue to protect appellant from margin calls (and the evidence does not indicate that Reuben made any such promise), that representation is about a future rather than a past or present event. *See Miller & Schroeder, Inc. v. Gearman*, 413 N.W.2d 194, 197 (Minn.Ct.App.1987). Trading on margin is inherently a high risk venture. Future assurances made by brokers do not form the basis of a misrepresentation claim. *See Schenck v. Bear, Stearns & Co.*, 484 F.Supp. 937, 944 (S.D.N.Y.1979).

■ The affidavits of appellant and Wasson contain evidence that Wasson advised appellant not to respond to the margin calls at PJH and Pagel. A claim for fraudulent misrepresentation requires proof that the misrepresenter acted dishonestly or in bad faith. *Florenzano v. Olson*, 387 N.W.2d at 173. Appellant has failed to allege that Wasson's statements were made with fraudulent intent. In fact, all evidence is to the contrary.

Appellant's claim of fraudulent misrepresentation is not supported by facts and the trial court correctly granted summary judgment in favor of all respondents on that theory.

### B. Negligence

■ The basic elements necessary to maintain a claim for negligence are (1) duty; (2) breach of that duty; (3) the breach was the proximate cause of plaintiff's injury; and (4) plaintiff did in fact suffer injury. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982); *Acli International Commodity Services, Inc. v. Lindwall*, 347 N.W.2d 522, 525 (Minn.Ct. App.1984). Absent a special agreement, a stock broker or brokerage house owes a customer only the duty to exercise due care in executing the customer's instructions. *Rude v. Larson*, 296 Minn. 518, 519–20, 207 N.W.2d 709, 711 (1973).

■ There is no evidence that respondents PJH or Pagel breached their duty to appellant. Appellant received margin calls from PJH and Pagel, and chose to ignore those calls. The trial court was therefore correct in granting summary judgment on the negligence claims against PJH and Pagel. As to respondents Midwest and Reuben, however, there are material facts in dispute. By affidavit, appellant's Midwest broker, Wasson, states that he advised appellant against responding to the margin calls at PJH and Pagel. This evidence raises a fact issue as to whether Midwest and Reuben breached their duty to appellant. It was inappropriate to grant summary judgment for Midwest and Reuben on the claim of negligence, and we therefore reverse as to this issue.

### C. Conversion

■ Appellant's claim for conversion against PJH and Pagel fails because he has not shown that those respondents exerted control over his property in contravention of his rights. *See Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955). PJH and Pagel did not sell any of appellant's stock except pursuant to the specific terms of the parties' customer

agreements. When such sales were made, appellant's account was well below the minimum balance required by those brokerage houses, and sometimes even below the margin required by federal law. PJH and Pagel were entitled to sell appellant's stock in order to make up for his account deficiency. There are no facts in dispute with respect to appellant's claim of conversion, and respondents are entitled to judgment as a matter of law.

### D. Breach of Fiduciary Duty

 A stock broker must exercise due care in executing all instructions expressly given by the customer. *Rude v. Larson*, 296 Minn. at 519, 207 N.W.2d at 711. The broker is not an insurer against loss sustained by the investor. *Id.* There is no evidence that respondents PJH or Pagel acted outside the scope of their written agreements with appellant. As to respondents Midwest and Reuben, there appears to be factual matters in dispute with respect to the handling of appellant's account. By affidavit, appellant states that respondents Midwest and Reuben (1) moved his account to PJH and then to Pagel without his consent, (2) placed stock in his account at PJH and later at Pagel to protect it from a margin call and (3) agreed to restore his position in Mentor stock in June of 1984. This evidence places material facts in dispute as to whether respondents Midwest and Reuben breached their duty of reasonable care in executing all instructions given by appellant. It was inappropriate to grant summary judgment for Midwest and Reuben on the claim of breach of fiduciary duty, and we therefore reverse as to this issue.

The trial court's decision as to respondents PJH and Pagel is affirmed in all respects. Since there are fact issues in dispute regarding Midwest's advise to appellant concerning margin calls, we reverse the grant of summary judgment for respondent Midwest and Reuben only on appellant's claims for negligence and breach of fiduciary duty. In all other respects, the trial court's decision as to Midwest and Reuben is affirmed.

### II.

Appellant argues that the trial court erred in denying his motion to amend his complaint to include claims for damages under Minn.Stat. § 80A (1988) and for breach of contract. Although pleadings may be freely amended under Minn.R.Civ. P. 15.02 when justice so requires, "the liberality to be shown in the allowance of amendments depends in part upon the stage of the action." *Tomlinson Lumber Sales, Inc. v. J.D. Harrold Co.*, 263 Minn. 470, 474–75, 117 N.W.2d 203, 207 (1962) (quoting *Dale v. Pushor*, 246 Minn. 254, 262, 75 N.W.2d 595, 601 (1956)). In this case, appellant had been allowed to amend his complaint at the end of discovery over one year before this motion. Additionally, appellant had filed his certificate of readiness for trial six months before filing this motion. The trial court denied appellant's motion to amend as being untimely, prejudicial to respondents, and legally deficient.

 A motion to amend a complaint is committed to the trial court's discretion. *Utecht v. Shopko Department Store*, 324 N.W.2d 652, 654 (Minn.1982); *Sprangers v. Fundamental Business Technology, Inc.*, 412 N.W.2d 47, 51 (Minn.Ct.App.1987). A denial of a motion to amend is proper when the movant fails to establish evidence to support the allegations the movant seeks to amend. *Eustis v. David Agency, Inc.*, 417 N.W.2d 295, 300 (Minn.Ct.App.1987). To state a claim under Minn.Stat. § 80A, appellant must allege a misstatement or omission in connection with his own decision to purchase or sell a security. Minn.Stat. § 80A.01(b) (1988); *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 536 (Minn.1986). Appellant has only alleged that Reuben promised protection from margin calls and that Wasson advised him against responding to the margin calls from other brokerage houses. These allegations do not state a claim under Minn.Stat. §§ 80A.01 and 80A.23(2) (1988).[1] *See Loper v. Advest,*

---

1. Minn.Stat. § 80A.31 (1988) provides that the Minnesota Securities Act is to be construed so

as to "coordinate the interpretation of sections 80A.01 to 80A.31 with the related federal regula-

*Inc.,* 617 F.Supp. 652, 654 (W.D.Pa.1985) (broker's breach of promise to give investor additional time to meet margin call and not liquidate account until specific date did not state claim under Section 10(b)); *Moran v. Kidder Peabody & Co.,* 617 F.Supp. 1065, 1067 (D.N.Y.1985) (investor's claim that broker misrepresented the status of his account and the manner in which it was being handled did not relate to specific securities and did not state a claim under Section 10(b)). Additionally, appellant's allegations do not state a claim for breach of contract because he has failed to show any independent consideration for the oral promise by Reuben and advice from Wasson.

Appellant's motion to amend was untimely, prejudicial to respondents and legally deficient. Under these circumstances, the trial court did not abuse its discretion in denying appellant's motion to amend his complaint.

### III.

 Respondents argue that the trial court abused its discretion by denying their request for attorney fees and costs under Minn.R.Civ.P. 11 and Minn.Stat. § 549.21 (1988). However, where the record indicates no bad faith and when there are bona fide issues to decide, it is improper to award fees. The mere fact that the action is not well-founded in the law is not sufficient to render an award of attorney fees appropriate. *Application of Mrosak,* 415 N.W.2d 98, 102 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 17, 1988). There is no clear abuse of discretion by the trial court's denial of respondents' request for fees and costs.

### DECISION

The trial court's judgment in favor of respondents PJH and Pagel is in all respects affirmed. The trial court is reversed as to its granting of summary judgment for respondents Midwest and Reuben

on appellant's claims for negligence and breach of fiduciary duty, but is otherwise affirmed in dismissing the claims brought against those respondents. The trial court properly denied attorney fees and costs where the record indicates no bad faith and the existence of bona fide issues to decide.

Affirmed in part, reversed in part.

---

tion." Federal case law is of considerable value as precedent in deciding issues arising under the act. *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 534 (Minn.1986). Minn.Stat.

§ 80A.01 is Minnesota's counterpart to Rule 10b–5, 17 C.F.R. § 240.10b–5 (1988). *See Foley v. Allard,* 427 N.W.2d 647, 650 (Minn.1988).