**MINNEAPOLIS EMPLOYEES RETIREMENT FUND, et al., Appellants,**

v.

**ALLISON–WILLIAMS COMPANY, et al., Respondents.**

No. C6–93–844.

Court of Appeals of Minnesota.

Nov. 23, 1993.

Review Granted Feb. 1, 1994.

James B. Lynch, J. Thomas Vitt, David A. Ranheim, Dorsey & Whitney, Pillsbury Cen-

ter South Minneapolis, for Minneapolis Employees Retirement Fund, et al.

Terrence J. Fleming, Randy G. Gullickson, Lindquist & Vennum, Minneapolis, for Allison–Williams Co., et al.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Minneapolis Employees Retirement Fund (MERF) sued respondent Allison–Williams Company (Allison–Williams) to recover losses incurred as a result of securities it bought from Allison–Williams. The complaint alleged that Allison–Williams breached a fiduciary duty to MERF, that Allison–Williams was negligent, and that Allison–Williams violated the Minnesota Securities Act (Securities Act) by selling unsuitable investments and failing to disclose material facts to MERF. Allison–Williams moved for summary judgment and sought sanctions under Minn.R.Civ.P. 11 against MERF. MERF subsequently moved to amend its complaint to add a Securities Act claim for excessive mark-ups.

The district court granted Allison–Williams' motion for summary judgment and awarded attorney fees pursuant to rule 11. The court denied MERF's motion to amend and MERF's subsequent motion for reconsideration. We affirm in part and reverse in part.

## FACTS

MERF is a public corporation that oversees the investment of some of the pension funds for the city of Minneapolis. From 1980 until 1990, MERF entered into high-yield bond transactions with Allison–Williams, a licensed securities broker-dealer engaged in the purchase and sale of securities in the secondary market for private placement.

Allison–Williams deals primarily with institutional clients, including a number of pension funds throughout the country. Its Chairman of the Board of Directors and employee, respondent Robert C. Tengdin, represented Allison–Williams in its transactions with MERF.

MERF's representative in these transactions was its Executive Director and Chief Investment Officer, John Chenoweth, now deceased. Chenoweth had primary responsibility for MERF's in-house bond portfolio and had authority to engage in securities transactions for MERF. Chenoweth was also authorized to communicate MERF's investment objectives to other brokers. MERF's board retained overall responsibility for investment policies and activities.

There are scant records in MERF files relating to MERF transactions with Allison–Williams. The only information regarding communications between Allison–Williams and MERF is the contents of those files, Chenoweth's statements as reflected in MERF board meeting minutes, and Tengdin's testimony.

Tengdin first met with Chenoweth in the early 1980s. They had extensive discussions in which Chenoweth described MERF's investment objectives. Chenoweth was critical of the low returns previously generated by MERF's portfolio and expressed interest in obtaining greater returns by buying privately placed securities. The board minutes indicate that Tengdin advised Chenoweth about purchasing bonds, but that Chenoweth did not always follow his advice.

In June 1991, MERF sued Allison–Williams to recover losses incurred as a result of transactions with Allison–Williams.[1] In its complaint, MERF specifically alleged that Allison–Williams breached a fiduciary duty to MERF, that Allison–Williams was negligent, and that Allison–Williams violated the Securities Act by selling unsuitable investments and failing to disclose material facts to MERF.

---

**1.** Robert Tengdin is sued in his capacity as a director, officer, and agent of Allison–Williams for actions taken in those capacities. Unless otherwise indicated, references to Allison–Williams include Tengdin in his capacity as a director, officer, and agent of Allison–Williams.

Allison–Williams moved for summary judgment on MERF's claims and requested attorney fees under rule 11 based on MERF's alleged breach of fiduciary duty and failure to disclose claims. MERF subsequently deposed Tengdin and filed its memorandum opposing the motion. In that memorandum, MERF argued that Allison–Williams was liable under the Securities Act to MERF for excessive mark-ups on sales to MERF. MERF identified Allison–Williams' trading profits on the transactions in support of its allegation.

Subsequent to the summary judgment motion, MERF moved to amend its complaint to add an excessive mark-up claim. At this time, MERF also moved to add two other claims to its complaint, one for common law fraud and the other for violation of the Consumer Fraud Act.

On June 23, 1992, the district court granted Allison–Williams summary judgment on all three claims in the complaint, denied MERF's motion to amend, and granted Allison–Williams' motion for attorney fees under rule 11. MERF subsequently brought a motion for reconsideration. After considering new evidence, including expert affidavits submitted with the motion, the district court declined to vacate its original order, found the new evidence to be untimely, and entered its June 23, 1992 order as final.

## ISSUES

1. Did the district court err by granting summary judgment against MERF on its claim that Allison–Williams breached a fiduciary duty?

2. Did the district court err by granting summary judgment against MERF on its claim that Allison–Williams breached its duty to have or seek information from MERF before recommending the purchase of speculative, low-priced securities?

3. Did the district court clearly abuse its discretion by denying MERF's motion to amend its complaint to add a claim that Allison–Williams charged excessive mark-ups?

4. Did the district court err by granting summary judgment against MERF's negligence claim based on Allison–Williams' breach of a statutory duty of care?

5. Did the district court abuse its discretion by imposing rule 11 sanctions on MERF's attorneys?

## ANALYSIS

■ When reviewing an appeal from summary judgment, this court must determine whether there are any material issues of fact and whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

■ 1. MERF asserts that Allison–Williams breached a fiduciary duty to MERF that was created by the special relationship between them. *See Rude v. Larson*, 296 Minn. 518, 519–20, 207 N.W.2d 709, 711 (1973). But MERF has provided no evidence that such a relationship exists.

MERF asserts that a special relationship exists because of its status as a pension fund. MERF argues that because Allison–Williams was speculating with pensioners' money as opposed to Chenoweth's personal funds, a special relationship existed. Evidence was submitted, however, that indicates that pension funds commonly buy and sell high yield bonds, and, in fact, 11% to 14% of investors in the high-yield market are pension funds. U.S. Securities and Exchange Commission, The Corporate Bond Markets: Structure, Pricing and Trading at 5 (Jan. 1992). We thus conclude that MERF has failed to show that its status as a pension fund standing alone creates a special relationship with its brokers.

■ MERF further contends that because of Allison–Williams' expertise and sophistication, the length of their relationship, and Chenoweth's reliance on Allison–Williams' recommendations, they had a special relationship. But, as the district court found:

There is no evidence that MERF's relationship with Allison–Williams was different than MERF's relationship with the numerous other brokers with whom MERF dealt. There is not even an allegation that Allison–Williams' relationship

with MERF was different than Allison–Williams' relationships with its other institutional investors.

Accordingly, we find no factual dispute exists and summary judgment was properly granted on the claim that Allison–Williams owed MERF a fiduciary duty.

2. Rule 10b–5 of the Securities Exchange Act of 1934 prohibits the sale of unsuitable securities. *See O'Connor v. R.F. Lafferty & Co.,* 965 F.2d 893, 897 (10th Cir.1992). Minnesota securities law is patterned after federal securities law. In fact, Rule 10b–5 and Minn.Stat. § 80A.01 are almost identical. Thus, we find that the Securities Act also prohibits sales of unsuitable securities. *Cf. Foley v. Allard,* 427 N.W.2d 647, 650 (Minn. 1988) (federal securities case law has been deemed of considerable value in deciding issues arising under the Securities Act).

To further define a sale of unsuitable securities, we look to Minnesota Rules regulating broker recommendations to customers. Minnesota Rules provide in part:

> **Recommendations to customers.** In recommending to a customer the purchase, sale or exchange of any security, a broker-dealer shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts disclosed by such customer as to his financial situation and needs.
>
> A broker-dealer may not recommend speculative, low-priced securities to customers without knowledge or an attempt to obtain information concerning the customers' other securities holdings, their financial situation, and other necessary data.

Minn.R. 2875.0910, subpt. 3 (1991).

The district court found that Allison–Williams' recommendations to MERF were consistent with MERF's investment objective, as Chenoweth presented it, and therefore Allison–Williams did not sell MERF unsuitable securities. We disagree. Allison–Williams made unsuitable recommendations if it sold MERF speculative, low-priced securities without first having knowledge or attempting to obtain information concerning MERF's financial situation and other holdings. *Id.* Merely knowing MERF's investment objective was not necessarily sufficient to satisfy the duty imposed by this rule.[2]

Thus, a factual dispute exists as to whether Allison–Williams sold MERF unsuitable securities. It is the trier of fact's role to determine whether Allison–Williams sold MERF speculative, low-priced securities and if so, to determine whether Allison–Williams had or attempted to obtain information concerning MERF's financial situation before making those sales. Hence, the district court erred in granting summary judgment.

3. Leave to amend a pleading must be given freely when justice so requires. Minn.R.Civ.P. 15.01. Nonetheless, this court will not reverse the district court's decision to grant or deny a motion to amend unless the court clearly abused its discretion. *Wagner v. Schwegmann's South Town Liquor, Inc.,* 485 N.W.2d 730, 733 (Minn.App. 1992), *pet. for rev. denied* (Minn. July 16, 1992).

The district court denied MERF's motion to amend to add an excessive mark-up claim on the grounds that there were no questions of material fact as to whether Allison–Williams charged excessive mark-ups. Consequently, to determine whether the district court abused its discretion in denying MERF's motion to amend and add this claim, we must ascertain whether MERF presented sufficient evidence to create a material question of fact on this issue.

A broker violates federal securities laws by charging excessive mark-ups. *See Barnett v. United States,* 319 F.2d 340, 344 (8th Cir.1963); *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 835 F.2d 1031, 1033 (3rd Cir.1987); *cf.* Minn.R. 2875.0910 (establishing similar standard under Minnesota law). Under the federal securities act, a mark-up is excessive if the broker charges a price that is not reasonably

---

**2.** Allison–Williams asserts that, absent a special agreement or relationship, a broker owes a customer *only* the duty to exercise due care in executing the customer's instructions pursuant to

*Davis v. Midwest Discount Sec., Inc.,* 439 N.W.2d 383 (Minn.App.1989). *Davis* did not negate duties imposed on brokers by statute.

related to the prevailing market price. *See, e.g., In re Alstead, Dempsey & Co., Inc.,* 47 S.E.C. 1034, 1035 (1984); *In re DMR Sec., Inc.,* 47 S.E.C. 180, 181 (1979).

In determining whether a price charged is not reasonably related to the prevailing market price and therefore excessive, federal courts often apply the National Association of Securities Dealers (NASD) Rules of Fair Practice. The NASD Board of Governors has created a "5% Policy" which may be used to ascertain whether a mark-up is fair. This policy provides that fairness of a mark-up can be determined only after considering all relevant factors. Moreover, it states that under certain conditions, a mark-up in excess of five percent may be justified, but a five percent or even a lower rate is not always justified. Rules of Fair Practice, NASD Manual (CCH) ¶ 2154 at 2057 (1991).

The board has interpreted the five percent policy to be a guide, not a rule. *Id.* Furthermore, it has indicated that in the absence of other bona fide evidence of the prevailing market, a seller's own contemporaneous cost is the best evidence of a security's market price. *Id.*

Using Allison–Williams' cost as evidence of the prevailing market price, MERF calculated mark-ups of over five percent on more than one of its purchases from Allison–Williams. Based on these calculations, MERF alleges that Allison–Williams charged excessive mark-ups. It may be, given the nature of the bonds, that these mark-ups were not excessive. *See Bank of Lexington & Trust Co. v. Vining–Sparks Sec.,* 959 F.2d 606, 613–14 (6th Cir.1992) (allowing mark-up of more than five percent). Nevertheless, the questions of fact concerning the mark-ups of more than five percent preclude summary judgment on this issue.

Allison–Williams' argument that it was a principal at risk does not alter our analysis. Allison–Williams reasons that the risk it takes by holding securities before sale precludes a duty to charge a fair price unless it is a same-day transaction having little risk. Accepting this argument, the district court found that because MERF did not identify a *same-day* transaction exceeding five percent, no factual dispute exists. The Securities and Exchange Commission has applied the five percent policy to non-same-day sales. *In re DMR,* 47 S.E.C. at 182.

We conclude there is a factual dispute as to whether Allison–Williams charged an excessive mark-up and that the district court abused its discretion by denying MERF's motion to amend the complaint.

■■■ 4. The elements necessary to maintain a ˉnegligence claim are (1) duty; (2) breach of that duty; (3) the breach was the proximate cause of plaintiff's injury; and (4) plaintiff suffered injury. *Davis v. Midwest Discount Sec., Inc.,* 439 N.W.2d 383, 387 (Minn.App.1989). We have found that there is a question of fact as to whether Allison–Williams breached its duties to recommend suitable securities and to avoid excessive mark-ups.

■■■■■ Furthermore, regulatory violations may constitute negligence per se if the regulation is intended to protect the class of persons to which the plaintiff belongs. *See Johnson v. Farmers & Merchants State Bank,* 320 N.W.2d 892, 897 (Minn.1982). Minnesota's securities regulations are "for the protection of investors." *See* Minn.Stat. § 80A.25, subds. 1, 2. Consequently, there is a question of fact as to whether Allison–Williams was negligent per se because it may have violated Minn.R. 2875.0910, subpt. 3. Accordingly, we reverse the district court's entry of summary judgment on MERF's negligence claim.

■■■ 5. This court applies an abuse of discretion standard to a district court's decision to sanction an attorney under Minn. R.Civ.P. 11. *Uselman v. Uselman,* 464 N.W.2d 130, 145 (Minn.1990). Courts should somewhat narrowly construe rule 11 to avoid deterring legitimate or arguably legitimate claims. *Id.* at 142.

■■■ The district court sanctioned MERF's attorneys after finding that MERF had no good faith factual basis for its allegations that (1) MERF and Allison–Williams had a special relationship creating a fiduciary duty claim; and (2) Allison–Williams failed to disclose material facts. Because Minnesota securities law is unsettled, MERF could have

reasonably believed its pleading was well-grounded in fact and law. Allowing sanctions to stand would deter other attorneys from pursuing good faith securities claims and hinder the development of state securities law. Accordingly, the trial court's award of rule 11 sanctions is reversed.

## DECISION

We affirm the district court's finding that no fiduciary duty existed. We reverse the district court's grant of summary judgment on the unsuitable recommendations claim and the negligence claim. Moreover, we reverse the district court's denial of MERF's motion to amend to add an excessive mark-up claim and award of rule 11 sanctions against MERF.

**Affirmed in part and reversed in part.**